[Civ. No. 1099.   Fifth Dist.   Sept. 3, 1969.]

MERVIN E. JAMES et al., Plaintiffs and Respondents, v. P.C.S. GINNING CO., INC., Defendant and Appellant.

Siemon & Patterson and R. D. Patterson, Jr., for Defendant and Appellant.

Granger & Moe and Lewis A. Moe for Plaintiffs and Respondents.

STONE, P. J.—Defendant appeals from a judgment quieting title in plaintiffs to real property upon which their home was located. The quiet title action was instituted to enforce a homestead filed prior to a personal judgment defendant obtained against plaintiffs and enforced by an execution sale of the real property.

The transaction began in 1965, when plaintiffs obtained financing from defendant gin to carry on their farming operations. They executed a promissory note and a crop mortgage

to secure the financing. As additional collateral, they executed security agreements which were, in effect, personal property mortgages covering farming equipment; listed along with the equipment was an item "Equity in House $8,000." In 1966, plaintiffs again financed with the gin and executed similar documents, reflecting the equity in the house at $10,000. Both financing statements were recorded.

Thereafter, on September 20, 1966, plaintiffs filed a declaration of homestead covering their residence at 720 Washington Street, Delano.

Plaintiffs failed to meet their payments. In February 1967, the gin filed an action against them, alleging the execution of the promissory notes secured by the two agreements, and the default in payments. The gin sought possession of the items of personal property and the equity in the house, but did not allege that the language "Equity in House" created an equitable lien nor seek to have the description made certain. A default judgment was entered March 21, 1967, in favor of the gin, for the sum of $131,167.28, attorneys fees of $15,000, and $38.50 costs. The judgment decreed that the gin have immediate possession of the farming equipment and "Equity in House $10,000.00." Since the "equity" was real property, the order as to it was a legal nullity.

To enforce the order, the gin obtained a writ of possession for the specifically described personal property and, to reach the "equity" in the house, obtained a writ of execution on the money judgment and levied against plaintiffs' equity in the real property. At an execution sale held November 30, 1967, defendant gin purchased what purported to be plaintiffs' equity in the real property.

In the meantime, on June 14, 1967, plaintiffs filed voluntary bankruptcy proceedings, claiming their residence to be exempt by virtue of the homestead. The referee approved the claim, set aside the real property as exempt, and discharged plaintiffs in bankruptcy. On September 26, 1967, plaintiffs filed this action to quiet title against defendant's judgment and execution sale, by reason of the homestead which predated the judgment. The matter was submitted to the trial court, sitting without a jury, upon stipulated facts. The court upheld the validity of the homestead.

Preliminarily, it is arguable that the description, "Equity in House $10,000.00," does not describe specific property and is therefore too vague to create a valid mortgage of real property. This point would be of great significance

were an innocent purchaser for value involved, but no third parties are concerned; the controversy is between the debtors and the mortgagee. There was no misunderstanding; both the gin and plaintiffs intended the equity in the home to be security for the loan. Under the rationale of *Coast Bank* v. *Minderhout*, 61 Cal.2d 311, 314 [38 Cal.Rptr. 505, 392 P.2d 265], a valid equitable lien was created between the parties even though the description of the property was vague and indefinite.

▮ Since there was a valid, equitable lien, the question narrows to whether the gin, by electing to file a personal action and reduce the indebtedness to a personal judgment, made an election of remedies that, by operation of law, waived its equitable lien priority over plaintiffs' subsequent declaration of homestead. Code of Civil Procedure section 726 provides that "There can be but one form of action for the recovery of any debt, or the enforcement of any right secured by mortgage upon real property, which action must be in accordance with the provisions of this chapter. . . ."

Since there can be but one form of action, under section 726, the courts have established that where a creditor elects to obtain a personal money judgment rather than enforce his mortgage, the effect of the election is to waive the right to foreclose on his security. (*Roseleaf Corp.* v. *Chierighino,* 59 Cal.2d 35, 38 [27 Cal.Rptr. 873, 378 P.2d 97]; *Salter* v. *Ulrich,* 22 Cal.2d 263, 268 [138 P.2d 7, 146 A.L.R. 1344]; 1 Witkin, Summary Cal. Law (1960) Security Transactions in Real Property, p. 745; *Mortgages and Trust Deeds: Enforcement of a Secured Debt in California,* 31 Cal.L.Rev. p. 429.)

▮ Defendant argues that even though it lost the right to foreclose on the property by not proceeding to foreclose according to section 726 of the Code of Civil Procedure, its judgment and execution take precedence over the homestead by reason of section 1241 of the Civil Code, which provides: "The homestead is subject to execution or forced sale in satisfaction of judgments obtained; . . . 4. On debts secured by encumbrances on the premises, executed and recorded before the declaration of homestead was filed for record."

The equitable lien was executed and recorded before the declaration of homestead was filed for record, so the question that emerges is whether the gin, by failing to enforce its equitable lien pursuant to section 726, forfeited the lien priority over the homestead that is provided by Civil Code section 1241. The landmark case, *Salter* v. *Ulrich, supra,* 22

Cal.2d 263, holds that a creditor who chooses to disregard his security and sue on the indebtedness must rely on the title obtained through an execution sale. But this leaves unsettled the effect of the election of remedies upon the prior lien which appears of record and clouds title to the property. In short, does the title of the gin, obtained by purchase at execution sale, relate back to the date the lien was recorded, by reason of section 1241 of the Civil Code?

The language of *Salter* has been interpreted to mean that when the creditor elects to recover a personal judgment "he loses all right to his security, thereby relegating himself to the position of an ordinary judgment creditor." (31 Cal.L.Rev. pp. 429, 433.) We believe this is a correct analysis and, by electing to rely upon a personal judgment, the gin lost all right to a lien priority, including that enjoyed under section 1241 of the Civil Code.

We do not rest this conclusion solely upon an interpretation of section 726 of the Code of Civil Procedure. Section 580a must also be taken into account. The holder of a deed of trust, mortgage, or similar security, who elects to foreclose must follow the procedure delineated in sections 726 and 580a of the Code of Civil Procedure, whereby a court must determine that the judgment is for no more than the amount by which the entire amount of the indebtedness due at the time of sale exceeds the fair market value of the real property or interest at the time of sale.

Manifestly the purpose of sections 726 and 580a is to prevent a mortgagee from bidding-in property for a nominal sum and obtaining a large deficiency judgment effectuating a forfeiture. If a mortgage lien priority remains viable despite the mortgagee's election to obtain a personal judgment, the creditor has all the advantages of a foreclosure plus a deficiency judgment by simply ignoring statutory foreclosure requirements.

We conclude that defendant, by suing on the note to obtain a personal judgment in disregard of its security, made an election of remedies which, under the impact of sections 726 and 580a, constituted a waiver of its lien priority established by the recordation of the security agreements. It follows that the trial court correctly quieted title in plaintiffs by reason of the homestead which preceded the judgment and execution sale upon which the gin's title rested.

By way of affirmative defense, the gin contends plaintiffs are barred from asserting the superiority of their

declaration of homestead over the recorded equitable lien because they failed to file a counterclaim in the original action on the indebtedness. (Code Civ. Proc., § 439.) However, plaintiffs were not required to appear in the original action unless they wished to force defendant to foreclose the lien pursuant to sections 726 and 580a of the Code of Civil Procedure. (*Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d at p. 40; *Salter* v. *Ulrich, supra,* 22 Cal.2d 263.) Where the mortgagors were content to have the mortgagee waive its right to foreclose against the security and proceed to obtain a personal judgment, a counterclaim alleging the homestead would have been premature. This, because a declaration of homestead relates to an interest in real property and until the indebtedness was reduced to judgment the lawsuit did not encumber plaintiffs' title; there was no basis for asserting the homestead by way of counterclaim.

Defendant also argues that its affirmative defense of equitable estoppel should have been sustained by the trial court. The substance of its argument is that plaintiffs knowingly gave the gin an equitable lien upon their property to secure a legitimate loan, and a court of equity should not permit them to evade their indebtedness through a homestead filing.

There are two answers. First, the gin had the choice of foreclosing pursuant to sections 726 and 580a, and wiping out the declaration of homestead by foreclosure, or to disregard its security, proceed to obtain a personal money judgment, and forfeit its lien. Thus it was defendant's own choice of action, not that of plaintiffs, that gave the homestead priority over the personal judgment. Second, defendant, by reducing its debt to judgment and selling the property pursuant to a levy of execution in an attempt to circumvent restrictions on deficiency judgments embodied in sections 726 and 580a, is hardly in a position to argue equity.

Finally, defendant asserts the court failed to make certain findings it requested. Since the case was submitted on an agreed statement of facts, no findings are necessary. In denying defendant's request for special findings, the trial court noted that it relied upon the stipulated facts. The trial court was faced with questions of law; findings are required only "upon the trial of a question of fact by a court." (Code Civ. Proc., § 632.) Moreover, conclusions on every issue of law are not required to be set out in support of a judgment. (*Duff* v. *Duff,* 256 Cal.App.2d 781, 785 [64 Cal.Rptr. 604]; *Kerr*

*Land & Timber Co.* v. *Emmerson,* 233 Cal.App.2d 200, 222 [43 Cal.Rptr. 333] ; *City of National City* v. *California Water & Tel. Co.,* 204 Cal.App.2d 540, 545 [22 Cal.Rptr. 560] ; *Yorty* v. *Los Angeles City Council,* 239 Cal.App.2d 138, 142 [48 Cal. Rptr. 600].)

The judgment is affirmed.

Gargano, J., concurred.