In re H.J. KRISTAL, dba Olivet Egg Ranch, Debtor.

CARNATION COMPANY, Plaintiff,

v.

H.J. KRISTAL, et al., Defendants.

BANCROFT, AVERY & McALISTER, Plaintiff,

v.

The CARNATION COMPANY, H.J. Kristal, etc., Defendants.

William LAMPI, Trustee, Plaintiff,

v.

The CARNATION COMPANY, Defendant.

The CARNATION COMPANY, Plaintiff,

v.

William LAMPI, Trustee, and Bancroft, Avery & McAlister, Defendants.

BAP No. NC-82-1413-AsEV.
Bankruptcy No. 4-80-01852-WL.
Adv. Nos. 4-80-0282-AW, 4-80-0388-AW
and 4-80-0269-AW.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued Sept. 22, 1983.

Decided March 23, 1984.

Arne D. Wagner, Beckford, Spanner & Kelley, Palo Alto, Cal., for Carnation Co.

Eric L. Henrikson, Henrikson & Gee, Oakland, Cal., for trustee.

Before ASHLAND, ELLIOTT and VOL-INN, Bankruptcy Judges.

OPINION

ASHLAND, Bankruptcy Judge:

INTRODUCTION

The Carnation Company (Carnation) appeals from a decision of the bankruptcy

court declaring Carnation's contractual security interest in a note secured by real and personal property assets (mixed collateral) void as violative of California Code of Civil Procedure (C.C.P.) § 726.

We affirm.

## ISSUES

1. The correctness of the application of C.C.P. § 726 to the post-judgment acts of Carnation.

2. The application of the "sanction" protection to render Carnation's security interest in all of the collateral void.

3. The validity and enforceability of Carnation's post-judgment liens.

## FACTS AND PROCEDURAL POSTURE

Dr. Harold J. Kristal (Kristal, debtor) was involved in poultry farming. He became substantially indebted to Carnation for chicken feed supplies. On April 11, 1975 Kristal gave Carnation a note for $606,-382.23, the balance then owing for feed. The note was secured by a trust deed on real property located in Marysville, California, and by the following personal property:

  a. A note itself secured by a deed of trust on property located in Sonoma County, known as Olivet Ranch.

  b. A land sale contract.

  c. A one-third interest held by Kristal in Golden Valley Farm, a general partnership.

  d. A 20 percent interest held by Kristal in Kobok Ranch, a general partnership.

  e. Fifty-six shares of common stock of Perfection Dental Laboratories.

  f. One hundred sixteen shares of common stock of East Bay Dental Arts Studio, Inc.

Kristal subsequently defaulted. On March 4, 1976 Carnation filed a "Complaint for Breach of Promissory Note and for Foreclosure of Security" against Kristal and other defendants. Carnation asked for foreclosure of its security interest and an order permitting sale of the collateral. All of the assets pledged as security for the note were named in paragraph 14, subsections a through p of the Complaint. No security interest was omitted.

Carnation obtained entry of a judgment in its favor on December 28, 1979 after a lengthy and costly jury trial. That verdict was incorporated into a formal "Net Judgment After Verdict" dated February 14, 1980 and made effective as of December 20, 1979. Pursuant to the Net Judgment, Carnation was awarded a "Total Money Judgment" of $652,850.37. That sum included the balance of the note after Kristal was awarded $225,000 as an offset on his cross-complaint for breach of warranty, plus Carnation's costs and attorneys fees and expenses of collection. The judgment further stated:

> IT IS FURTHER HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff is awarded foreclosure, and may have execution, levy and sale of the items of collateral which are set forth in the complaint . . .

Carnation then proceeded to act upon its judgment in a manner that was held violative of C.C.P. § 726 in the subsequent bankruptcy adversary proceeding. The post-judgment acts included the following: a judgment debtor examination was held. Kristal was ordered placed on a personal and business budget, and was restrained from disposing of his assets, whether or not Carnation had a security interest in the item. Abstracts of judgments were recorded in nine counties. Writs of execution were directed to the sheriffs of six counties. None of the security was located in three of the counties. The letters transmitting the writs to the Yuba and Marin County sheriffs directed a levy upon all of the debtor's real and personal property of any sort. Carnation filed a motion for a charging order against various partnership interests of Kristal that were not pledged as collateral. A motion was filed for the appointment of a receiver. Carnation also obtained an *ex parte* order of garnishment of property in which it had no security interest.

On February 26, 1980 Carnation caused a sale of the Marysville property pursuant to a writ of execution. Carnation purchased the property for $14,157.85.

On June 16, 1980 Kristal filed a Chapter 7 petition in bankruptcy. On July 9, 1980 Carnation commenced an adversary proceeding seeking leave of the bankruptcy court to foreclose on the note collateral pursuant to the state court judgment. In April, 1981 the trustee commenced an adversary proceeding opposing such foreclosure. Cross-motions for summary judgment were heard on October 2, 1981. On August 10, 1982 the bankruptcy court filed its Decision and Judgment declaring Carnation's security interest in the note to be void. Carnation timely filed its notice of appeal.

### DISCUSSION AND ANALYSIS

I. The correctness of the application of C.C.P. § 726 to the post-judgment acts of Carnation?

C.C.P. § 726 is commonly known as California's "single-action" or "one action" anti-deficiency statute. Courts have construed the statute to mean that in the event of a default, the mortgagee's sole judicial remedy is a foreclosure action. A creditor seeking judicial foreclosure must include all security for the note in that one action. Omitting any part of the security leaves the debtor with two judicially created protections. First, the debtor may insist upon the inclusion of the security in the action (the "affirmative defense" protection). Secondly, if the creditor fails to include the security, and the debtor does not raise the affirmative defense, the debtor may later treat the omitted property as free of the lien (the "sanction" protection). The creditor is compelled to exhaust his security before he proceeds with a deficiency judgment that may be further restricted by C.C.P. §§ 580a through 580d.

The relevant portions of the C.C.P. § 726 to be considered here are as follows:

There can be but one form of action for the recovery of any debt for the enforcement of any right secured by mortgage upon real property, which action must be in accordance with the provisions of this chapter....

. . . . .

The decree for the foreclosure ... shall declare the amount of indebtedness ... unless judgment for any deficiency ... is prohibited by Section 580b ... and shall name the defendants against whom a deficiency judgment may be ordered following the proceedings prescribed in this section.... In the event that a deficiency is not waived or prohibited and it is decreed that any defendant is personally liable for the debt, then upon application of the plaintiff filed at any time within three months of the date of the foreclosure sale and after a hearing thereon at which the court shall take evidence and at which time either party may present evidence as to the fair value of the property ..., the court shall render a money judgment against the defendant ... for the amount by which the amount of the indebtedness with interest and costs of levy and sale and of action exceeds the fair value of the property ... Cal.Code of Civ.Proc. § 726 (West Supp.1984).

California's anti-deficiency statutes (C.C.P. §§ 580a, 580b, 580d, and 726) were enacted during the Great Depression to protect defaulting debtors. The basic purposes underlying the statutes were:

to prevent multiplicity of actions, to compel exhaustion of all security before entry of a deficiency judgment and to require the debtor to be credited with the fair market value of the secured property before being subjected to personal liability ... (*Walker v. Community Bank,* 10 Cal.3d 729, 736, 111 Cal.Rptr. 897, 518 P.2d 329 (1974).

*See also* Leipziger, "Deficiency Judgments in California: The Supreme Court Tries Again", 22 UCLA L.REV. 753 (1975)).

Both parties agree that the sanction aspect of C.C.P. § 726 has been applied by courts against creditors who obtained judgment based upon an action where either all or some of the security was omitted. Cases

where the creditor omitted all of his security from his "one action": *Roseleaf v. Chierighino,* 59 Cal.2d 35, 27 Cal.Rptr. 873, 378 P.2d 97 (1963) (dictum); *Slater v. Ulrich,* 22 Cal.2d 263, 138 P.2d 7 (1943); *Commercial Bank v. Kershner,* 120 Cal. 495, 52 P. 848 (1898); *Hibernia Savings & Loan Society v. Thornton,* 109 Cal. 427, 42 P. 447 (1895); *Ould v. Stoddard,* 54 Cal. 613 (1890); *James v. P.C.S. Ginning Co.,* 276 Cal.App.2d 19, 80 Cal.Rptr. 457 (1969); *Kaiser Industries Corp. v. Taylor,* 17 Cal.App.3d 346, 94 Cal. Rptr. 773 (1971). Cases where the creditor omitted some of his security from his "one action": *Walker v. Community Bank,* 10 Cal.3d 729, 111 Cal.Rptr. 897, 518 P.2d 329 (1974); *Newhall v. Bank of Livermore,* 136 Cal. 533, 69 P. 248 (1902); *Stockton Savings & Loan Association v. Harrold,* 127 Cal. 612, 60 P. 165 (1900); *Hall v. Arnott,* 80 Cal. 348, 22 P. 200 (1889); *Mascarel v. Raffour,* 51 Cal. 242 (1876). It is important to recall that Carnation included all of its security in its "one form of action".

■ This is a case of first impression. We must decide if C.C.P. § 726 applies when the creditor has included all of his security in his "one form of action", but has engaged in post-judgment acts that arguably violate the principle of the statute.

The facts giving rise to the assertion of C.C.P. § 726 in this adversary proceeding are not specified within the ambit of the statute. However, it is clear that the legislature intended that foreclosing real property creditors comply with the fair value provisions of the anti-deficiency statutes. Support for the applicability of § 726 to this case is grounded on recognition of the placement of C.C.P. § 726 within the statutory scheme of the Code of Civil Procedure. The statute is found at Title 10 (Actions in Particular Cases), Chapter 1 (Actions for the Foreclosures of Mortgages). Carnation's state court action and subsequent adversary proceeding are actions for the foreclosure of mortgages.

Two arguably conflicting statutes exist in California: C.C.P. § 726 and Cal.Commercial Code § 9501(4). Section 9501 specifically prescribes the use of the Commercial Code enforcement procedures where the security is solely personal property. Subsection (4) speaks to mixed security:

> If the security agreement covers both real and personal property or fixtures (§ 9313(1)(a)), the secured party may proceed under this chapter as to the personal property or fixtures or he may proceed as to both the real property and the personal property or fixtures in accordance with his rights and remedies in respect of the real property in which cases the provisions of this chapter do not apply. (Cal. Comm.Code § 9501(4) (West Supp.1984)).

In its conclusion of law, the bankruptcy court noted that this case is not on all fours with *Walker v. Community Bank,* 10 Cal.3d 729, 111 Cal.Rptr. 897, 518 P.2d 329 (1974), the seminal California decision construing the interplay between C.C.P. § 726 and Cal. Commercial Code § 9501(4). At issue in *Walker* was the applicability of C.C.P. § 726 to mixed security—real and personal property. The court stated in *Walker* at 735, 111 Cal.Rptr. 897, 518 P.2d 329:

> The above subdivision (Cal.Comm.Code § 9501(4)) clearly specifies that if the creditor proceeds as to *both* real and personal property security, he must do so according to the rights and remedies accorded real property security and *not* pursuant to The Commercial Code . . . (Emphasis in original).

The court held in *Walker* that where a single debt was secured by mixed collateral, and where the creditor elected judicially to foreclose only on the personal property, he lost his security interest in the real property even though the debtor did not raise C.C.P. § 726 as an affirmative defense. Hence, C.C.P. § 726 is the applicable statutory authority for procedure and enforcement of mixed collateral if the creditor chooses to remain secured as to the real property security.

■ The bankruptcy court found that the principle of Walker was violated by Carnation when it obtained a money judgment simultaneously with a foreclosure judgment; and by Carnation's acts to reach

property of the debtor that were not security for the debt. The court further concluded that Carnation did not obtain a deficiency judgment as such, but the money judgment and execution on property that was not collateral for the loan had the same effect of subjecting the debtor to personal liability before exhausting all security, thus, violating C.C.P. § 726. The bankruptcy court stated:

> Since Carnation violated § 726, the sanction of § 726 must be applied and Carnation's security interest in the collateral for the Note is void.

Carnation held a note secured by mixed collateral. It named all of its security in its one action. The real property security was sold on February 26, 1980. This is the converse of the facts in *Walker* where the creditor proceeded against the personalty first, not the realty (and where the creditor omitted the realty from its one action).

Pursuant to C.C.P. § 726, Carnation should have applied to the court any time within three months of the date of the foreclosure sale (February 26 through May 26) for a fair value hearing to determine the amount of the deficiency judgment, and entry of a money judgment in its favor. Carnation did not apply for a fair value hearing. The money judgment Carnation held as a result of the state court action did not waive compliance with the deficiency judgment prescriptions stated in the statute. Carnation's nonfeasance caused it to violate C.C.P. § 726. Carnation cannot do by judicial declaration that which is prohibited by statute. Thus, we conclude that the trial court was correct in applying C.C.P. § 726 to the post-judgment acts of Carnation.

II. The application of the "sanction" protection to render Carnation's security interest in all of the collateral void.

The debtor did not raise C.C.P. § 726. The trustee raised the statute for the first time in the pending adversary proceeding. In *Walker,* at 729 n. 4, 111 Cal.Rptr. 897, 518 P.2d 329, the California Supreme Court, citing and relying upon *Salter v. Ulrich,* 22 Cal.2d 263, 138 P.2d 7 (1943) and *James v.*

*P.C.S. Ginning Co.,* 276 Cal.App.2d 19, 80 Cal.Rptr. 457 (1969), held that the sanction takes effect whether the security is owned by the debtor or his successor in interest. 11 U.S.C. § 323(a) states that the trustee is the representative of the estate. Federal Rule of Bankruptcy Procedure 6009 states, among other things, that the trustee may prosecute or defend any pending proceeding by or against the debtor, or commence and prosecute any proceeding in behalf of the estate. The protections of the statute were available to the trustee and he timely raised them before the bankruptcy court.

When Carnation deviated from the statutory prescriptions of C.C.P. § 726 by failing to apply for a fair value hearing, and by proceeding against the debtor's general estate, it "omitted" security from its action, and thus, waived its security interest in the chattel security.

The California Supreme Court clearly stated the trigger event that activates the "sanction" aspect of C.C.P. § 726 in *Walker* at 734, 111 Cal.Rptr. 897, 518 P.2d 329.

> ... If the debtor does not raise the section (C.C.P. § 726) as an affirmative defense, he may still invoke it as a sanction against the creditor on the basis that the latter *by not foreclosing on the security in the action* brought to enforce the debt, has made an election of remedies and waived the security. (Emphasis added.)

Failure to foreclose on the security in the action has been judicially defined in the cases construing C.C.P. § 726 as an omission of all or part of the security in the action.

The trustee argues that Carnation "omitted" all of its security, not at the outset of the litigation, or when judgment was entered, but at the point where it chose to deviate from the statutory procedure articulated in C.C.P. § 726 and proceeded against the debtor's general estate. The trustee further contends that the statute effectively requires inclusion and foreclosure of all security, beginning at the complaint, through judgment, and through sale and a fair value hearing, culminating in a

deficiency judgment. Carnation contends that judicial adoption of the trustee's expanded definition of failure to foreclose would inject chaos into secured transactions, because a secured creditor, after obtaining judgment of foreclosure on all his security, might still be subject to a sanction long afterward, depending on his post-judgment conduct.

The *Walker* court may have suggested the result in this case. In its discussion of the applicability of C.C.P. § 726 to mixed collateral, the court cited with approval an excerpt from Hetland, *California Real Estate Secured Transactions,* (Cont.Ed.Bar 1970) § 618, pp. 260–261. The parenthetical in brackets is the court's own language.

> (T)he creditor may not first have a judicial action to foreclose on any security [*either real or personal*] without losing the balance of his security, thereby precluding any future nonjudicial sales. (Emphasis added). *Walker* at 735, [111 Cal. Rptr. 897, 518 P.2d 329].

It must be remembered that the creditor in *Walker* foreclosed on his chattel property, while keeping his real property in reserve. The facts in this case are inapposite. The result in *Walker* was a holding that the creditor had waived the balance of his security—his real property. The insertion of the language in parenthesis in the Hetland quotation indicates that the court would hold with the same waiver of the balance of security *if* the creditor foreclosed on his real property security while holding the chattel property in reserve. However, we know that one major fact separates *Walker* from this case. The secured creditor in *Walker* omitted part of his security in his one action, while Carnation did not omit any of its security.

We have held that the bankruptcy court correctly applied C.C.P. § 726. We agree with the court's reasoning that Carnation's post-judgment acts violated the spirit and intent of the statute. Carnation's acts subjected the debtor to the type of harassment and personal liability that the statute was designed to prohibit. A broad reading of the court's quoted statement from Hetland, with its own language included, plus, an understanding of the legislative intent behind the anti-deficiency statutes, supports our conclusion that the sanction aspect of the statute was triggered, and that Carnation's security interest in the pledged collateral is void.

III. The validity and enforceability of Carnation's post-judgment liens.

The bankruptcy court stated in its judgment that it was not determining whether Carnation obtained valid judgment liens through its efforts to pursue a money judgment. The court held that Carnation had "elected" to be treated as a money judgment creditor rather than as a foreclosing creditor. As such, Carnation would be entitled to the rights and remedies of a money judgment creditor, including the right to enforce any valid liens of judgment, levy or execution that it possesses. A determination of those rights and concommitant remedies was reserved by the trial court.

Affirmed.