[No. D013286. Fourth Dist., Div. One. Mar. 11, 1992.]

GLORIA C. O'NEIL et al., Cross-complainants and Appellants, v.
GENERAL SECURITY CORPORATION et al., Cross-defendants and
Respondents.

588

## COUNSEL

Lesley Ann Ash and William R. Thomas II for Cross-complainants and Appellants.

James H. Martin, Michael T. Pines, Lindley, Lazar & Scales, Michael H. Wexler and R. Gordon Huckins for Cross-defendants and Respondents.

## OPINION

**FROEHLICH, J.**—In this action Gloria C. O'Neil et al. (collectively Judgment Creditors) filed a cross-complaint against cross-defendants General Security Corporation et al. (collectively Refinancers). Judgment Creditors' cross-complaint sought to have a particular trust deed, which encumbered certain real property in favor of Judgment Creditors and secured a promissory note in which the various Judgment Creditors held fractional interests, declared senior to Refinancers' trust deed. The cross-complaint also sought an order compelling Refinancers to "marshal assets" by first pursuing other assets allegedly available to repay the indebtedness owed them.

Refinancers moved for judgment on the pleadings as to Judgment Creditors' cross-complaint. Refinancers' motion essentially argued that Judgment Creditors, by obtaining a monetary judgment on the underlying note in an earlier action against the debtors, had forfeited any further rights to pursue the security for the note (i.e., the trust deed) and therefore lacked "standing" to pursue the cross-complaint. The trial court granted Refinancers' motion. Judgment Creditors appeal from the subsequent order dismissing their cross-complaint.

Our review of the facts of this case, in light of the statutory scheme regulating real property secured transactions, convinces us the trial court correctly concluded Judgment Creditors waived their ability to assert an interest in the property adverse to Refinancers when Judgment Creditors obtained a personal judgment against the debtors. Accordingly, we affirm as to all Judgment Creditors except Leonore Jacksland.

FACTS[1]

I. *The Loans and Trust Deeds*

Judgment Creditors were members of a group of individuals who lent money to Rancho View Partners in late 1981. Judgment Creditors received varying fractional interests in the promissory note (the Judgment Creditors' note) evidencing the loan, and Judgment Creditors' note was secured by a deed of trust on certain real property then owned by the borrower. By early 1983, however, Judgment Creditors' note was in default. A newly formed entity, which included Rancho View Partners and Barclays Newport Investment Corporation (hereinafter Rancho), eventually sought a new loan to permit it to develop and sell the property in order to insure repayment of Judgment Creditors' loan.

Rancho obtained new lenders, Refinancers herein. As a condition to the loan, Refinancers required that their security be a first trust deed on the property. To satisfy this demand, Rancho sought and obtained a subordination agreement from Judgment Creditors, under which Judgment Creditors agreed to and did subordinate their trust deed to the trust deed securing Refinancers' loan.

Thus, by late 1983 Rancho's property was encumbered by a first trust deed securing Refinancers' note and a second trust deed securing Judgment Creditors' note.

---

[1]We review the facts in the light most favorable to Judgment Creditors because of the standard of review applicable to this case. Review of an order granting a motion for judgment on the pleadings is governed by the same standard applicable to reviewing an order sustaining a general demurrer: We ordinarily examine only the face of the pleadings, together with matters subject to judicial notice, to determine whether such facts are sufficient to constitute a cause of action. (*Hughes* v. *Western MacArthur Co.* (1987) 192 Cal.App.3d 951, 954-955 [237 Cal.Rptr. 738].)

The ordinary standard of review is altered in this case, however, because extrinsic evidence was introduced and considered in ruling on the motion. In opposing Refinancers' motion, Judgment Creditors submitted a copy of a settlement agreement, apparently not a document subject to judicial notice. The trial court and Refinancers nevertheless evaluated and argued the effect of the settlement on Refinancers' motion, and Refinancers' only objection related to whether the evidence was filed in a timely fashion and not to its substantive admissibility. When a trial court, in ruling on a demurrer, considers "evidence" outside the pleadings without objection by the opposing party, we review such nonstatutory speaking motion as a motion for summary judgment. (*Shapiro* v. *Wells Fargo Realty Advisors* (1984) 152 Cal.App.3d 467, 475, fn. 3 [199 Cal.Rptr. 613].) We thus reject Refinancers' argument that we must disregard entirely the settlement agreement; instead, we include its terms within our calculus to determine whether Judgment Creditors' claim is viable.

## II. *Judgment Creditors' Prior Action*

In early 1985 Rancho defaulted on both notes. Accordingly, in October 1985, 37 beneficiaries of the now-subordinated Judgment Creditors' trust deed filed suit against numerous defendants (including the Rancho parties) asserting damages for fraud, negligent misrepresentation and breach of contract, and also seeking judicial foreclosure of the trust deed. In late 1989 a settlement was reached between the Rancho defendants and numerous members of the class of beneficiaries of the first note.[2] The legal effect of that settlement on Judgment Creditors' right to maintain their current cross-complaint is the central issue in this appeal.

The settlement stipulated that a *personal* judgment be entered against the Rancho defendants and in favor of Judgment Creditors (other than Leonore Jacksland)[3] for the amount of $280,000. The case as to the remaining plaintiffs and defendants was dismissed without prejudice.

Neither the stipulation for entry of judgment nor the judgment itself purported to except any of the causes of action of the original complaint from the operation of the judgment. However, the underlying settlement agreement purported to preserve the right of Judgment Creditors to pursue nonjudicial foreclosure under their subordinated trust deed.[4]

## III. *The Present Action*

In February 1988, General Security Corporation, as trustee under Refinancers' deed of trust, filed a second amended complaint seeking, among

---

[2]At some point the original class of plaintiffs became subdivided into at least two groups. The one group germane to this appeal was comprised of Judgment Creditors here. This group (other than Leonore Jacksland) entered into the settlement agreement which is critical in this case.

[3]Although we have heretofore generically referred to appellants as "Judgment Creditors," any references to "Judgment Creditors" in the balance of the opinion shall refer to all appellants other than Leonore Jacksland, whose status we treat separately in part III of the Discussion, *post.*

[4]Specifically, paragraph B of the settlement agreement provided in pertinent part:

"1. That . . . judgment may be taken against [debtors] and in favor of [Judgment Creditors] in the sum of $280,000.

"2. That [Judgment Creditors] shall maintain their ownership in the Note and Deed of Trust . . . .

"3. [Judgment Creditors and debtors] waive their respective rights to judicial foreclosure of the subject real property. [Judgment Creditors] shall maintain their right to proceed with a non-judicial foreclosure of the Deed of Trust or in any way attempt to recognize value from the security of the Deed of Trust.

"4. That in the event that any value is received as a result of the foreclosure of the Deed of Trust, [Judgment Creditors] shall credit such amounts to the outstanding balance of the judgment . . . ."

other things, judicial foreclosure of Refinancers' deed of trust. Judgment Creditors cross-complained, seeking a judgment declaring Judgment Creditors' trust deed senior to Refinancers' trust deed because the subordination agreement which reversed their priorities was invalid based on failure of consideration. Alternatively, Judgment Creditors sought to compel Refinancers to marshal assets by first pursuing other assets allegedly available to repay the indebtedness to Refinancers.

In late 1990, after the stipulated judgment against Rancho was entered in Judgment Creditors' prior action, Refinancers moved for judgment on the pleadings as to Judgment Creditors' cross-complaint. Refinancers asserted Judgment Creditors had waived any right to pursue their cross-complaint because the 1989 settlement and judgment had extinguished all of Judgment Creditors' rights to pursue recovery under Judgment Creditors' trust deed. Specifically, Refinancers argued that Judgment Creditors' judgment against Rancho constituted an election of remedies which, under Code of Civil Procedure[5] section 726 and relevant case law, resulted in a forfeiture of any further right to pursue either judicial or nonjudicial foreclosure of the trust deed. Refinancers also argued that because Judgment Creditors lost all further rights to pursue the security, Judgment Creditors lacked standing to assert that such trust deed should be reinstated to first priority, as prayed for in their declaratory relief cause of action. Refinancers also argued the "marshaling of assets" claim should be dismissed because a claimant seeking such remedy must first show he has a competing interest in the same security as his opponent, and Judgment Creditors' forfeiture of rights in the trust deed eliminated any competing claim to the real property.

Judgment Creditors opposed the motion, arguing that Rancho had specifically waived the protections afforded it by the "one form of action" rule under Code of Civil Procedure section 726, and that Refinancers were not entitled to assert such protections in their own stead, being neither debtors nor successors of the debtors.

The trial court granted Refinancers' motion and dismissed the cross-complaint. Judgment Creditors timely appealed.

We conclude the trial court correctly ruled that entry of the personal judgment in Judgment Creditors' prior action barred them from further pursuing their security interest as against Refinancers, and that the purported waiver by Rancho of the "one form of action" rule was ineffective to preserve Judgment Creditors' trust deed rights as against Refinancers. Accordingly, as to those Judgment Creditors who recovered a personal judgment against Rancho, the order dismissing their cross-complaint was proper.

---

[5]All statutory references are to the Code of Civil Procedure unless otherwise specified.

## DISCUSSION

I. *Obtaining a Personal Judgment on a Note Secured by a Mortgage on Real Property Without First Judicially Foreclosing Results in Forfeiture of the Secured Party's Rights Under the Mortgage*

The single issue here is whether, on the facts of this case, section 726 operates to bar further recourse by Judgment Creditors on the trust deed which secured Judgment Creditors' note. Section 726, which sets forth the so-called "one form of action" rule, is part of the statutory protections and procedures which restrict the secured creditor's remedies for notes secured by real property. ■ As judicially construed, section 726 is both a "security-first" and "one-action" rule: It compels the secured creditor, in a single action, to exhaust his security judicially *before* he may obtain a monetary "deficiency" judgment against the debtor. (*Security Pacific National Bank* v. *Wozab* (1990) 51 Cal.3d 991, 999 [275 Cal.Rptr. 201, 800 P.2d 557].)

If a creditor, in violation of section 726, files suit on the note without pursuing foreclosure on the security, section 726's protections can be invoked in two distinct ways. (*Security Pacific, supra,* 51 Cal.3d at p. 997.) First, the debtor may raise section 726 as an affirmative defense, compelling the creditor to first exhaust the security before being entitled to a monetary judgment on the unsatisfied portion of the debt. Alternatively, if the debtor elects not to raise the affirmative defense aspect of section 726, he may later invoke it as a sanction: The creditor who obtains a monetary judgment in contravention of the security-first rules of section 726 will be deemed to have forfeited his right to further pursue his security interest. (*Walker* v. *Community Bank* (1974) 10 Cal.3d 729, 733 [111 Cal.Rptr. 897, 518 P.2d 329].)

The operation of the "sanction" aspect of section 726 was illustrated in *Walker.* There, a loan was secured by both a trust deed and a chattel mortgage. The creditor filed judicial proceedings to foreclose on the chattel mortgage but omitted any mention of the trust deed. The debtor answered without invoking section 726 as an affirmative defense. The matter proceeded to judgment, with the creditor foreclosing on the chattel and eventually obtaining a personal judgment against the debtor for the unsatisfied portion of the debt. When the creditor subsequently sought to enforce its trust deed by nonjudicially foreclosing on the real property, the new owner sued to quiet his title against the trust deed. (*Walker* v. *Community Bank, supra,* 10 Cal.3d at pp. 732-733.) The Supreme Court concluded that the sanction aspect of section 726 prohibited such foreclosure, holding that

when the creditor obtains a personal deficiency judgment without first pursuing judicial foreclosure on the real property, ". . . he thereby loses his security interest in the real property as against all parties even though the debtor does not raise [section 726] as an affirmative defense in the judicial . . . proceedings." (*Id.* at p. 741.)

Here, Judgment Creditors pursued a course analogous to that of the creditor in *Walker.* Judgment Creditors prosecuted an action which resulted in a personal deficiency judgment on the note without first exhausting the security through judicial foreclosure proceedings. They now seek to realize upon their security interest, purportedly under their "retained" right to nonjudicially foreclose. The only relevant factual difference between this and the *Walker* case is the debtor's "waiver" of the sanction aspect of section 726. We therefore conclude Judgment Creditors must forfeit their security interest as a matter of law (*James* v. *P.C.S. Ginning Co.* (1969) 276 Cal.App.2d 19, 22-24 [80 Cal.Rptr. 457]) *unless* the waiver is enforceable against Refinancers.

## II. *Rancho's Purported Waiver of Section 726 Is Invalid Against Refinancers*

Judgment Creditors' only escape from the sanction aspect of section 726 depends upon the enforceability of the underlying settlement with Rancho, specifically the preservation of rights otherwise forfeitable under *Walker.* Judgment Creditors argue section 726 is purely a personal protection which the debtor may waive and therefore the waiver by Rancho of the sanction aspect is permissible and enforceable against both Rancho and third parties. We disagree and conclude the waiver is not enforceable against Refinancers, for several reasons.

### A. *Decisional Law Establishes that a Waiver by the Debtor Cannot Deprive Other Parties in Interest of Section 726's Protections*

It is undisputed that Rancho, but not Refinancers, agreed Judgment Creditors could have *both* a personal judgment on the note and the right to pursue nonjudicial foreclosure despite the mandates of section 726. We will assume, for purposes of this appeal, the agreement is enforceable as against Rancho.[6] This does not resolve the issue, however, as to whether Rancho's waiver of the sanction aspect of section 726 is enforceable against nonconsenting third parties. Precedent which is at least analogous supports the conclusion that such waiver is not enforceable.

---

[6]We question whether the agreement is enforceable even against Rancho. Despite the generalized statements in several cases that section 726 was enacted for the protection of, and therefore can be waived by, the debtor, none of the authorities cited by Judgment Creditors holds that the *sanction* aspect can be waived by the debtor. In *Salter* v. *Ulrich* (1943) 22

It has been held, for instance, that one debtor's waiver of section 726's protections is unenforceable against nonconsenting coobligors on the note who enjoy section 726's protections, even though they were not comakers of the trust deed. In *Pacific Valley Bank* v. *Schwenke, supra,* 189 Cal.App.3d 134, two debtors (Schwenke and O'Brien) cosigned a note secured by deeds of trust on real property owned by O'Brien. O'Brien later induced the creditor to release the deeds of trust, thereby transforming the note from secured to unsecured. However, this release of security was done without the consent of Schwenke. (*Id.* at pp. 137-138.) In a later action by the creditor against Schwenke, the court held that Schwenke was entitled to assert the protections of section 726, notwithstanding the apparent waiver of such protections by his codebtor, and that release of the security precluded any further action on the note against the nonconsenting codebtor. (*Id.* at p. 146.) Similarly, in *Walker* v. *Community Bank, supra,* 10 Cal.3d at pp. 740-741, a debtor's failure to compel the creditor to exhaust security in a prior action constituted waiver of the affirmative defense aspect of section 726 as to that debtor, but the successor-in-interest to the debtor could still assert the section 726 sanction.

Refinancers admittedly do not occupy the same equity position of the third parties in either *Pacific Valley Bank* (as a codebtor) or *Walker* (as a successor-in-interest to the debtor). However, we are convinced Refinancers' status as beneficiaries of a trust deed gives them a sufficient interest in the property to cloak them with the protections afforded by the sanction aspect of section 726. In *Salter* v. *Ulrich, supra,* 22 Cal.2d 263, the sanction aspect of section 726 was applied to benefit a party who, like Refinancers here, claimed an

Cal.2d 263 [138 P.2d 7, 146 A.L.R. 1344], for example, the court held that the affirmative defense aspect was waivable by the debtor, but it then *enforced* the sanction aspect of section 726. (*Id.* at p. 268.) Again, in *Pacific Valley Bank* v. *Schwenke* (1987) 189 Cal.App.3d 134 [234 Cal.Rptr. 298], the court stated (albeit in dictum) that the protections of section 726 were waivable by the debtor, but held that an agreement by one debtor to allow the creditor to sue on the note without first exhausting the security was not binding on a nonconsenting codebtor. (*Id.* at p. 146.) The other cases cited by Judgment Creditors are even less relevant. For example, in *Williams* v. *Reed* (1957) 48 Cal.2d 57 [307 P.2d 353], the court again stated in dictum that section 726's protections were waivable, but held that only the personal judgment against one of the debtors was obtained on an obligation *independent* of the secured obligation and thus did not violate section 726. (*Williams* v. *Reed, supra,* at pp. 64-67.) In *Martin* v. *Becker* (1915) 169 Cal. 301 [146 P. 665], the court opined that section 726 was a protection available to the debtor, but its holding was limited to ruling that the existence of a mortgage did not destroy the creditor's right to rely also on his mechanic's lien rights to enforce the debts. Finally, in *Murphy* v. *Hellman Commercial etc. Bk.* (1919) 43 Cal.App. 579 [185 P. 485], the court merely held that when the primary debtor's obligation is unsecured, entry of judgment on that obligation does not release a third party guarantor whose guarantee is secured by real property. Since we are cited no authority holding the *sanction* aspect of section 726 is ever waivable, and because section 726 can well be viewed as a nonwaivable statute serving independent public purposes (Civ. Code, § 3513), it remains open to question whether the waiver would be enforceable even against Rancho.

interest in the property *adverse to the property owner/debtor.* In *Salter* the property was subject to two liens: a trust deed and a junior street improvement bond. The creditor under the trust deed sued the debtor on the note without mentioning the security, and obtained a judgment on the note. The creditor then levied on the property by writ of execution and purchased the property at the execution sale. However, the property was still subject to the adverse claim by the beneficiary of the bond lien. In a later quiet title action by the bond claimant against the creditor, the bond claimant argued the creditor's judgment (and resulting title) was *void* because the creditor failed to foreclose before obtaining the monetary judgment. Although the court rejected the "void judgment" argument, concluding the benefits of the affirmative defense provided by section 726 were waivable, it *also* ruled the creditor's title was *subject to* the lien of the improvement bond because his title was based solely on the title he derived from the execution sale as an ordinary judgment creditor. (*Salter, supra,* at p. 268.) Thus, the *Salter* court effectively imposed the sanction aspect against the creditor in favor of a person claiming adversely to the debtor, because the creditor, in failing to follow the mandates of section 726, forfeited the priority his trust deed would otherwise have enjoyed against the junior lienholder.

In *Walker* v. *Community Bank, supra,* the court reaffirmed that the sanction aspect of 726 could be raised and enforced by persons other than the primary debtor. Rejecting the creditor's claim that section 726's sanction is available solely to the debtor, the *Walker* court stated:

"*Salter* holds that if the primary debtor fails to raise section 726 as an affirmative defense, such waiver is binding upon his successor-in-interest. . . . [A]lthough there is a waiver of the affirmative defense the sanction aspect of the rule is still invocable. *Salter* specifically recognizes that the successor in interest or indeed one who holds even an adverse interest is protected by the sanction aspect just as much as the primary debtor. The court in *Salter* as in [*James* v. *P.C.S. Ginning Co.* (1969) 276 Cal.App.2d 19] refers to the sanction aspect as an election of remedies so that a creditor who sues on a note and fails to foreclose his security thereby waives his security interest. This waiver is binding against parties in addition to the primary debtor . . . ." (*Walker* v. *Community Bank, supra,* 10 Cal.3d at p. 739, fn. 4.)

We thus conclude, under *Walker* and *Salter,* that the sanction aspect of section 726 operates for the benefit of both the primary debtor and third parties claiming an interest in the property, whether as successors-in-interest or third party lienholders. Since a waiver by one party of the benefits of section 726's protections does not forfeit the benefits enjoyed by other protected parties (*Pacific Valley Bank* v. *Schwenke, supra,* 189 Cal.App.3d

134), we conclude Refinancers are entitled to assert the sanction aspect of section 726 in their own stead.

Our conclusion that third party lienholders have standing to assert statutory protections notwithstanding the principal debtor's waiver of such protections finds additional support in the cases dealing with debts barred by statute of limitations. ■ When a debt secured by a mortgage becomes unenforceable because of the creditor's failure to initiate enforcement actions before the statute of limitations has lapsed, the creditor is barred not only from suing on the debt but also from realizing the security either by judicial foreclosure (*Aguilar* v. *Bocci* (1974) 39 Cal.App.3d 475, 477 [114 Cal.Rptr. 91]) or by exercise of the power of sale. (*New York Life Ins. Co.* v. *Doane* (1936) 13 Cal.App.2d 233, 238 [56 P.2d 989].) This statute of limitations defense is deemed a "personal" defense waivable by the debtor (*Prussing* v. *Prussing* (1939) 35 Cal.App.2d 508, 515 [96 P.2d 128]). Notwithstanding, a junior lienholder may still assert the defense for his own benefit even though the waiver may otherwise be enforceable between the debtor and the senior creditor. (See *Flack* v. *Boland* (1938) 11 Cal.2d 103, 106 [77 P.2d 1090] [debtor's waiver of defense not binding on junior lienholder, who may assert defense to defeat senior lienholder's judicial foreclosure action]; *Schriber* v. *Alameda etc. Title Ins. Co.* (1958) 156 Cal.App.2d 700, 704-705 [320 P.2d 82] [even if obligor on secured note waived personal protection afforded by statute of limitations defense, third parties with liens on property securing note may interpose statute of limitations for their own benefit].)

We therefore conclude that security and priority rights in the encumbered property held by third parties have independent status, are entitled to independent protections, and cannot be defeated by unilateral waivers between the debtor and other creditors.

B. *All of Judgment Creditors' Remedies, Including Foreclosure of the Security, Were Merged and Extinguished by the Judgment, and Judgment Creditors' Remedies Were Thereafter Limited to Such Remedies as Are Available to a Judgment Creditor*

■ Also consistent with the rules regarding merger is the *Walker* court's conclusion that a creditor who violates section 726 ". . . thereby loses his security interest in the real property *as against all parties* . . . ." (*Walker* v. *Community Bank, supra*, 10 Cal.3d at p. 741, italics added.)

In a suit on a secured note, while a plaintiff may plead multiple theories of recourse, there is but one basic obligation to be enforced: repayment of the

note.[7] Alternative remedies are available to enforce such obligation. (*Frost* v. *Witter* (1901) 132 Cal. 421, 425-427 [64 P. 705] [action on note and action to foreclose mortgage are merely alternative remedies for same obligation].) However, when a final judgment is entered, all causes of action arising from the same obligation are merged into the judgment and all alternative remedies to enforce that obligation extinguished by the judgment granting one of those remedies. (*Busick* v. *Workmen's Comp. Appeals Bd.* (1972) 7 Cal.3d 967, 973 [104 Cal.Rptr. 42, 500 P.2d 1386].) The creditor cannot thereafter enforce the original obligation, because the judgment " '. . . creates a new debt or liability, distinct from the original claim or demand, and this new liability is not merely *evidence* of the creditor's claim, but is thereafter the *substance* of the claim itself.' " (*Hutchison* v. *Reclamation Dist. No. 1619* (1927) 81 Cal.App. 427, 438 [254 P. 606], italics in original.) In other words, the personal judgment extinguishes the contractual rights and remedies previously extant, substituting in their place *only such rights as attach to a judgment.* (See, e.g., *Chelios* v. *Kaye* (1990) 219 Cal.App.3d 75, 80 [268 Cal.Rptr. 38] [judgment on note containing attorney fees clause: creditor not entitled to attorney fees in enforcing judgment because such enforcement does not carry right to attorney fees, and right to fees under note extinguished by merger into judgment].)

■ By taking a personal judgment on the note, Judgment Creditors exhausted all of their remedies under both the note and trust deed (*Ould* v. *Stoddard* (1880) 54 Cal. 613, 615), limiting their rights thereafter to those of any other ordinary judgment creditor. While Judgment Creditors may levy upon the property by writ of execution issued on their judgment, the lien of the writ does *not* "relate back" to the priority enjoyed by the original trust deed. (*James* v. *P.C.S. Ginning Co.*, supra, 276 Cal.App.2d 19, 22-24.) This priority, however, is precisely what Judgment Creditors contend. If Judgment Creditors' agreement with Rancho were enforced, the effect would be unilaterally to "subordinate" the rights and priorities of intervening lienholders to the lien of the unsecured judgment *without obtaining the consent* of those intervening lienholders. Essentially Judgment Creditors claim the right to proceed as unsecured creditors under their judgment, and further claim

---

[7]Of course to the extent a plaintiff has a "primary right" distinct and independent from the "primary right" previously litigated in the prior action, the prior adjudication would not operate to merge his unlitigated rights into the prior judgment, even though both rights arise from similar factual circumstances. (See *Sawyer* v. *First City Financial Corp.* (1981) 124 Cal.App.3d 390, 399-403 [177 Cal.Rptr. 398] [judgment in first lawsuit, which pleaded contractual rights of recovery on a secured promissory note, involved different primary rights from those asserted in second lawsuit alleging tort recovery based on conspiracy to deprive plaintiff of ability to seek repayment or realize on security].) Here, however, the first action involved the same primary right (i.e., the contractual right to collect on the secured note) as in the current action, which seeks to restore the priority of the plaintiff's contractual right to enforce the note, and hence the ordinary rules of merger and res judicata are applicable.

Rancho's agreement permits them to sell the property free and clear of junior liens to satisfy that unsecured judgment. We are unaware of any authority allowing a judgment debtor unilaterally to subordinate lienholders to a judgment creditor, and we decline to enforce such an agreement in this case.

### C. *If the Agreement Were Enforced, Several of the Policies and Protections of the Statutory Scheme Would Be Undermined*

Finally, we note that permitting Rancho's waiver of the sanction aspect of section 726 to undermine the priority of other parties in interest could frustrate several purposes of the statutory scheme. ■ Section 726 is not an isolated statute; it is part of the broader statutory scheme which regulates secured creditors' rights and remedies. The policies of that scheme are to prevent multiplicity of actions, to compel exhaustion of the security before any deficiency judgment is permitted, and to require that the fair value of the secured property be utilized before any personal judgment is entered against the debtor. (*Walker* v. *Community Bank, supra,* 10 Cal.3d at p. 736.)

To assure implementation of such policies, the creditor must elect his course. If he pursues the security by nonjudicial foreclosure, he can avoid the "fair value" limitations of section 726, subdivision (b) and cut off any rights of redemption under section 729.020, but under section 580d he loses any right to a deficiency judgment. If he wishes to preserve his right to a deficiency judgment (and the concomitant right to pursue nonpledged assets) he must judicially foreclose, but the resulting deficiency judgment will be limited by the "fair value" limitation under section 726, subdivision (b), and the property will be subject to the redemption rights granted by section 729.020.

■ Judgment Creditors seek to enjoy the benefits of both avenues of relief while suffering the disabilities of neither. Judgment Creditors obtained a "deficiency judgment," but such judgment was entered without regard to the fair value of the security. Having obtained the judgment, Judgment Creditors now wish to nonjudicially foreclose, thereby avoiding both the right of redemption (*Cornelison* v. *Kornbluth* (1975) 15 Cal.3d 590, 602 [125 Cal.Rptr. 557, 542 P.2d 981]) and the "fair value" limitations of section 726, subdivision (b). Moreover, if the amounts realized from the trustee's sale do not fully extinguish the judgment, Judgment Creditors will have obtained a deficiency judgment unconstrained by the redemption and fair value limitations. Certainly the arrangement claimed enforceable by Judgment Creditors runs counter to several of the well-established policies of the scheme.

More importantly, some of the harm from such an arrangement will be visited upon others, such as Refinancers here, who are interested in seeking

repayment from the property and/or Rancho's unencumbered assets. ■ The statutory scheme seeks to minimize or entirely eliminate the extent to which a debtor's unpledged assets may be seized to satisfy a secured creditor's claims, in that the debt must *first* be satisfied from the sale of the security. Any residual judgment is *minimized* because either the sales price or fair market value, whichever is higher (§ 726, subd. (b)), is credited against the debt. Moreover, the statutes are designed to maximize the amounts credited against the debt, because the right of redemption discourages bidders at the judicial sale from intentionally underbidding for the property. This is because the redemptioner can recapture the property free of the lien for the amounts paid at the judicial sale (plus certain costs), and may exercise this option for either three months or one year after the sale. (§§ 729.020-729.060.) This discourages bidders from bidding less than the fair market value of the property at the initial sale. (*Cornelison* v. *Kornbluth*, *supra*, 15 Cal.3d at p. 602.)

The net effect of these provisions is to minimize the secured creditor's ability to deplete the debtor's estate of its assets. The debtor loses the property but gains its maximum value against the debt. Both the debtor *and* his other creditors benefit, because redemption will prevent the secured creditor from seizing the real property at artificially depressed values and obtaining an artificially inflated deficiency judgment for which the other assets must answer.[8]

■ These benefits would be lost were Judgment Creditors' special stipulation effectuated. Rancho's unencumbered assets would be subject to levy for the entire judgment, and the disincentives to artificial underbidding for the real property (i.e., redemption and fair value limitations) would be inapplicable upon Judgment Creditors' exercise of the right they claim to have retained—the right to nonjudicial foreclosure.

Moreover, if the arrangement were enforced it would also deprive Refinancers of a right specific to their position—the right to redeem from a judicial foreclosure sale. Under the law applicable to this transaction, for Judgment Creditors to have obtained the remedy they now claim to possess

---

[8]We deal here with the interests of secured parties and their rights derived from section 726. Similar policy objectives have been noted, however, in terms of the protection of unsecured creditors of debtors who have mortgaged their realty. "[T]he security-first principle 'protects not only the debtor but also the unsecured creditors who have access only to the debtor's unencumbered assets; to this extent the collateral first rule serves a function akin to the statutes requiring the 'marshaling of assets' ([Civ. Code,] § 3433) and the 'marshaling of liens' ([Civ. Code,] § 2899), which were enacted in the same year as the one action rule.' " (*Security Pacific National Bank* v. *Wozab*, *supra*, 51 Cal.3d 991, 1008, fn. 2. (conc. and dis. opn. of Broussard, J.).)

(i.e., the right to both a personal judgment *and* the right, as first trust deed beneficiaries, to use the property to satisfy part of that judgment), judicial foreclosure would be required. ▮▮▮▮ However, Refinancers would then possess the right of redemption, as either junior lienholders or successors-in-interest to the debtor.[9] ▮▮ The "arrangement" urged by Judgment Creditors would eliminate this right, since redemption is unavailable if Judgment Creditors exercise the nonjudicial foreclosure rights they claim are preserved.

For all of the foregoing reasons, we conclude the personal judgment obtained by Judgment Creditors in the prior action precludes resorting to the trust deed which secured their promissory note, and Rancho's agreement to restore Judgment Creditors' interest in the note and trust deed is unenforceable as against Refinancers.

### D. *Dismissal of the Cross-complaint Was Proper*

Because Judgment Creditors forfeited any further right to pursue their security as against Refinancers, the trial court properly dismissed Judgment Creditors' cause of action for declaratory relief, the relief they sought being a judgment declaring their trust deed senior to Refinancers' trust deed.

▮▮▮ It was also proper to dismiss the only other cause of action asserted by Judgment Creditors, i.e., marshaling of assets. To obtain an order requiring a creditor to marshal assets, the plaintiff must show that the creditor is entitled to resort to each of several assets to satisfy his claim, *and* that the plaintiff "has an interest in, or is entitled . . . to resort to some, but not all of," the same assets as does the creditor. (Civ. Code, § 3433.) Here, the basis for the "marshaling" claim was Judgment Creditors' contention that they had a security interest in the real property which competed with Refinancers' trust deed, while Refinancers also had other available assets. Since we

---

[9]Under the statutes effective prior to July 1, 1983, creditors with junior liens had the right to redeem from a judicial foreclosure sale. Although the law was changed (Stats. 1982, ch. 497, § 49, p. 2160, eff. July 1, 1983) to delete junior lienholders' redemption rights (see § 729.020), Refinancers' deed of trust was created and operative prior to July 1, 1983, and therefore the change in the law does not apply to deprive them of their redemption rights. (See *Welsh* v. *Cross* (1905) 146 Cal. 621, 623-627 [81 P. 229] [rights of redemption are governed by statute in effect at time obligation created, and changes in statute cannot be applied retroactively because Constitution prohibits "impairment of the obligations of contracts"].)

Moreover, even if the new law were applicable, successors-in-interest to the debtor have redemption rights. (§ 729.020.) These include ". . . a junior lienholder, who has acquired the judgment debtor's interest in the property through a prior foreclosure . . . ." (legis. com. com. West's Ann. Code Civ. Proc., § 729.020 (1992 pocket supp.) p. 10.) Refinancers could well have nonjudicially foreclosed prior to Judgment Creditors' judicial foreclosure sale and become the successors entitled to redeem.

conclude Judgment Creditors do not have a remaining security interest competing with Refinancers' rights to the property, Judgment Creditors' marshaling cause of action was properly dismissed.

### III. *The Judgment Must Be Reversed as to Leonore Jacksland*

 We have upheld the propriety of granting Refinancers' motion for judgment on the pleadings, because the judicially noticed documents showed Judgment Creditors had obtained a personal judgment on the note. However, we conclude on the same ground that the judgment dismissing the claims of Leonore Jacksland must be reversed. The face of the judgment shows she is not one of the trust deed beneficiaries who obtained a personal judgment on the note, and therefore she is not a party who suffers the sanction of section 726.

Refinancers raise several arguments in support of their claim the judgment should be affirmed as to Jacksland. We find none of these arguments persuasive. Refinancers' principal contention is waiver. It is argued that, because Judgment Creditors' presentation in the trial court failed to specify Jacksland should be treated differently, Judgment Creditors waived and are now estopped from asserting any error in disposing of her claims in common with the other Judgment Creditors. We disagree. First, Jacksland's unique status *was* raised by both sides in the trial court. Refinancers' motion rested on the argument that the stipulated judgment operated to waive the rights of those who obtain a personal judgment, but such motion specifically conceded Leonore Jacksland was not within that class of individuals.[10] Moreover, following the trial court's oral ruling, both parties submitted proposed orders for the court's signature. Judgment Creditors submitted a proposed order which would have exempted Jacksland from the judgment, pointing out that ". . . Ms. Jacksland was not among the individuals who obtained the judgment, and defendants' motion . . . acknowledged this."

More importantly, Judgment Creditors are not precluded from raising new points on appeal which do not involve disputed factual issues but present only issues of law. (*Koch* v. *Rodlin Enterprises* (1990) 223 Cal.App.3d 1591, 1595 [273 Cal.Rptr. 438].) Since the motion for judgment on the pleadings is effectively a demurrer, the facts are admitted and only questions of law are in issue, permitting new theories to be evaluated on appeal. (*Ibid.*; see also *Smith* v. *Commonwealth Land Title Ins. Co.* (1986) 177 Cal.App.3d 625, 629-630 [223 Cal.Rptr. 339].) Accordingly, we must consider

---

[10]Refinancers' papers in support of their motion stated the stipulated judgment "adjudicat-e[d] the rights of all *but one* of the cross-complainants in the present action" (italics added), and identified the excepted party as Leonore Jacksland.

the propriety of the order as to Jacksland even if it be deemed insufficiently raised below.

Refinancers' other arguments do not convince us that judgment on the pleadings was proper against Jacksland, because both arguments rest on factual assertions.[11] Since a judgment on the pleadings must disregard factual questions not presented by the face of the pleadings, we decline to affirm such ruling based on factual claims raised by Refinancers.

## DISPOSITION

The judgment as to Leonore Jacksland is reversed; otherwise the judgment is affirmed.

Benke, J., concurred. Wiener, Acting P. J., concurred in the judgment.

---

[11]For example, Refinancers claim Jacksland, as a tenant in common with the other Judgment Creditors, is bound by Judgment Creditors' actions because Jacksland's conduct, as well as other "evidence," suggests she accepted the benefits of the judgment or ratified Judgment Creditors' conduct. While these claims may well be documented at trial, nothing *on the face of the pleadings* indicates such conduct occurred.

Refinancers also claim Jacksland acquired her interest in the trust deed *after* its subordination, and therefore she lacked standing to assert that her interest should be restored to first priority because she never had an interest in a first trust deed. Apart from the factual issues presented by this claim (such as whether Jacksland was induced to acquire the interest based on the same factors which induced the Judgment Creditors to subordinate), we are unconvinced by this argument because Refinancers cite no authority holding that a party acquiring an existing interest in a trust deed does not succeed to *all* of the rights possessed by his assignor, including the right to rescind a subordination agreement.