[No. B079319. Second Dist., Div. Four. June 30, 1994.]

DONG SUK SHIN et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
KOREA FIRST BANK, Real Party in Interest.

**COUNSEL**

Steven C. Kim for Petitioners.

No appearance for Respondent.

Ervin, Cohen & Jessup, Jacob D. Lee, Steven A. Roseman and Victoria Worth for Real Party in Interest.

OPINION

VOGEL (C. S.), J.—

### INTRODUCTION

Korea First Bank (KFB) obtained a summary adjudication permitting it to obtain a judicial foreclosure and deficiency judgment against petitioners Dong Suk Shin, Byung Kook Cheon, and Jung Soon Cheon. Petitioners then applied to this court seeking a writ of mandate to vacate that ruling on the ground that KFB had violated the "one form of action" provision of Code of Civil Procedure[1] section 726, subdivision (a) by obtaining a prejudgment attachment against Korean real property owned by petitioner Shin. We issued an alternative writ, stayed enforcement of the contested order, and set the matter for hearing. Having heard oral argument and reviewed the parties' pleadings, we grant the requested relief.

### FACTUAL BACKGROUND

On June 14, 1990, in Los Angeles, California, KFB loaned $9.6 million. Petitioners signed a promissory note secured by a deed of trust on California real property. Petitioners defaulted on the promissory note by failing to make interest payments for August 15, 1991, and each month thereafter. KFB elected to accelerate the note and demanded payment of the full principal with interest and late charges totaling $10,263,341.66.

On May 22, 1992, KFB commenced a judicial action in the Seoul Civil District Court, in Korea, and obtained a prejudgment attachment order which was recorded against real property in Korea owned by petitioner Shin.

On June 2, 1992, KFB filed this action for judicial foreclosure and a deficiency judgment.[2] Petitioners' answer generally denied the allegations of the complaint and alleged several affirmative defenses of no relevance to the issues before this court.

On March 17, 1993, KFB filed a motion for summary adjudication of issues to determine its right to foreclose on the California realty and to obtain a deficiency judgment. The motion was unopposed and granted. On June 8, 1993, KFB applied for a "writ of possession/sale/execution" to begin the foreclosure.

---

[1]Hereinafter, all statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2]KFB's complaint includes the additional causes of action for money lent, specific performance, and fraud and deceit.

On June 15, 1993, petitioner Shin, with the benefit of new counsel, moved for reconsideration on the grounds he was not fluent in English and had not informed his prior counsel that KFB had placed a lien on his Korean property. The court granted the motion to reconsider, vacated its order for summary adjudication of issues, and permitted petitioners to file opposition to KFB's motion.

Petitioners' opposition consisted of evidence that KFB obtained a court order for a prejudgment attachment against Shin's real property in Korea. Based on that circumstance, petitioners contended that KFB had violated the provisions of section 726, subdivision (a) and effectively had waived its security interest in the California real property. In sum, petitioners' position was predicated on the premise that, by filing in a Korean court to protect its claim, KFB had exposed itself to the sanction imposed on creditors who pursue an "action" in violation of the "one form of action" rule.[3]

On reconsideration, the court again granted on September 30, 1993, KFB's motion for summary adjudication finding that KFB's "creation of a claim of lien in Korea against defendant Dong Suk Shin's property located in Korea did not constitute an action in violation of Code of Civil Procedure, § 726."

### DISCUSSION

### I

The primary question before us may be plainly stated as follows: Did KFB violate section 726, subdivision (a) when it obtained from the Seoul Civil District Court a prejudgment attachment order against Shin's property in Korea prior to commencement of the present action for judicial foreclosure?

Section 726, subdivision (a) provides in relevant part as follows: "There can be but one form of action for the recovery of any debt or the enforcement of any right secured by mortgage upon real property . . . in accordance with the provisions of this chapter." In operation, the "one form of action" rule "applies to any proceedings or action by the beneficiary for the recovery of the debt, or enforcement of any right, secured by a mortgage or deed of trust. *The only 'action' that is permitted is foreclosure; any other 'action' is a violation of the rule that invokes severe sanctions.*" (4 Miller & Starr, Cal. Real Estate (2d ed. 1989) Deeds of Trust and Mortgages, § 9:105, p. 348, italics added.)

Whether the filing in the Korean court constitutes an "action" within the proscription of section 726, subdivision (a) is governed by the

---

[3]Initially, the motion to reconsider was made only by Shin. However, opposition was filed on behalf of all petitioners without any objection.

definition of "action within the meaning of section 22." (*Security Pacific National Bank* v. *Wozab* (1990) 51 Cal.3d 991, 998 [275 Cal.Rptr. 201, 800 P.2d 557].) Section 22 provides: "An action is an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense."

On that point, KFB and petitioners produced declarations from their respective expert witnesses to explain the procedure and effect of KFB's application to the Korean court for a prejudgment attachment. Both expert witnesses were experienced and qualified attorneys licensed to practice before all courts of the Republic of Korea. Their declarations are in substantial agreement and confirm that KFB filed in the Seoul Civil District Court to obtain a "Pre-judgment Order of Attachment."

According to KFB's expert witness, "KFB was allowed to record a lien on [Shin's] Property. Under the Korean Rules of Civil Procedure, the attachment and lien procedure is merely a provisional remedy which, upon a minimal showing, allows claimants to have their claims to real property recorded for purposes of giving notice to potential purchasers and lenders. This is strictly a provisional remedy which is allowed by Section 697 of the Korean Rules of Civil Procedure. The acquisition of the attachment order and the resulting recording of a lien, however, does *not* mean that KFB's claim to [Shin's] Property has been adjudicated by the court, or that, by virtue of having the lien recorded, KFB may assert any legal or equitable title to [Shin's] Property. Rather, it only means that KFB's claim to [Shin's] Property has been recorded . . . to preserve KFB's priority if KFB should obtain a judgment against Dong Suk Shin some time in the future. . . ." (Italics in original.)

Although the declaration of KFB's expert witness assiduously avoids the term "action," it is clear KFB prosecuted its claim on the debt in a court of justice for the protection of its right to recover its claim evidenced by the $9.6 million secured promissory note. It is also clear that KFB was required to make only a "minimal showing" that Shin was, in fact, indebted to KFB. Some discrepancy exists between the explanations of the respective experts as to whether KFB may proceed in the pending matter or whether it must follow up with another action to foreclose in the Seoul Civil District Court. That point is of no consequence because either way KFB invoked the jurisdiction of the Korean court to protect its claim with an involuntary lien. In other words, whether the Korean law involves a one-step or two-step process does not change the characterization of KFB's application to the Korean court as an action for judicial relief to protect its claim. The Korean action is literally within the operation of section 22.

KFB contends that the Korean action does not violate the "one form of action" rule because it did not proceed to judgment. "[I]t is not clear what conduct by the beneficiary constitutes an 'action' within the rule. [¶] On the one extreme, the mere *commencement* of an action by the creditor that does not include a foreclosure of all the real property security is not in violation of the rule since the creditor may dismiss the action before judgment or amend the complaint to include a foreclosure of all of the security. On the other extreme, when the creditor recovers a personal money *judgment* against the debtor without first foreclosing all of the security, the sanctions of the 'one action' rule are applied, and the creditor loses the liens on all property not foreclosed in that action. [¶] In between these two extremes, the decisions have not provided a clear definition of what conduct by the creditor will invoke the sanctions of the one-action rule." (4 Miller & Starr, Cal. Real Estate, *supra*, § 9:105, p. 348, italics in original & fns. omitted.) Here, the Korean action has not proceeded to judgment but it has not been dismissed and Shin's property remains encumbered by the attachment. Consequently, KFB's filing of a separate action lies somewhere in between the two extremes and must be evaluated according to existing case law and the policies which underlie California's "one form of action" rule.

KFB's expert witness aptly observes "Dong Suk Shin may have [a] difficult time selling or otherwise disposing of the Korean Property because of KFB's recording of the attachment Lien" and "the practical effect of the lien in the marketplace is such that no person on notice of the lien would likely purchase or lend against the Korean Property." This clearly demonstrates that KFB did more than merely commence an action. By commencement of the action in Korea, it obtained through a judicial proceeding an involuntary lien on additional assets of its borrower in order to increase the collateral over and above the value of the California real property, which was the security interest originally provided for KFB's loan.

In *Security Pacific National Bank* v. *Wozab, supra,* 51 Cal.3d 991, the court held that the bank, a creditor secured by a deed of trust on California real property, was subject to the sanction of losing its right to foreclose on the property because it had set off the borrowers' bank accounts against the debt without first exhausting the security. The bank contended the sanction was much too severe and proposed that it be allowed to refund the setoff with interest to the borrowers and to retain its security interest in the real property. The court rejected that proposal with the observation the bank's proposal "would deprive the [borrowers] of the full measure of protection contemplated under section 726(a). One of the primary purposes of the one-action rule is to protect the debtor from having to defend against a multiplicity of actions[:] . . . bringing one to recover the setoff and defending another by the creditor." (*Id.* at p. 1002.) Even though the court found

that the setoff did not constitute an "action," it found that the bank violated the secured creditor's obligation to proceed against the security before enforcing the underlying debt. (*Id.* at p. 999.)

If the exercise of an involuntary "banker's lien," without the aid of judicial authority, constitutes an election of remedies triggering forfeiture of the creditor's security interest, the initiation of an independent judicial proceeding to attach a debtor's unpledged personal assets (e.g., Shin's Korean realty) should certainly have the same effect. The fact that the exercise of a "banker's lien" resulted in the immediate loss of the debtor's cash deposits but KFB has had Shin's property under attachment for more than two years is not a significant difference. The extent of appropriation is only a matter of degree and, by restricting Shin's use of his unpledged assets, his ability to protect and defend his interests has been and is impaired. "[T]he economics of modern litigation are such that the [debtor] will be unable to [pay] counsel" to defend his interest whenever the secured creditor denies the debtor access to his unpledged assets. (*Security Pacific National Bank* v. *Wozab, supra*, 51 Cal.3d at p. 1002.)

Without regard to Shin's (or the other petitioners') ability or inability to bear the economic burden of defending this action, it is important to recognize that KFB's tactics, if allowed, would empower every secured lender to initiate lawsuits for the sole purpose of sequestering a debtor's unpledged assets to assure payment of a potential deficiency judgment before there is any showing that a deficiency will occur. The real vice of permitting this practice is that it may deny debtors access to assets which may be needed to fund a legal defense fending off such action and asserting their rights under section 726. Conceivably, secured creditors, following KFB's example, could pursue all of a debtor's unpledged and nonexempt assets with attachment proceedings rendering the debtor economically vanquished without ever demonstrating that its security is inadequate to satisfy its claim. This scenario is a logical extension of the position which KFB advocates and a result that section 726 prohibits. The facts in this case demonstrate the potential of abuse inherent in KFB's position. KFB initiated the Korean action *before* it filed this action for judicial foreclosure, thereby embarking on a process of freezing petitioners' assets without either demonstrating that a deficiency was likely or applying first to a California court for relief.

We believe it is contrary to the objectives of section 726, subdivision (a) to allow secured creditors to launch campaigns to sequester debtor's personal assets by filing separate actions on secured claims to obtain attachments in anticipation of a deficiency judgment which may arise in an independently filed judicial foreclosure action. We cannot countenance such

a strategy since it would force on the debtor an unreasonable burden of resisting and defending any number of actions in as many venues as the debtor may have unpledged assets.

Here, KFB has confronted Shin with two pending lawsuits on the same claim and only in the second one is it resorting to its security. This is a paradigm of what is meant by a "multiplicity of lawsuits." In *Commercial Bank* v. *Kershner* (1898) 120 Cal. 495, 500 [52 P. 848], the Supreme Court provides the rationale for enforcing the one action rule: "Why not allow a personal action as well before as after the mortgage security has been exhausted? The simple answer is found in the statute and in its reason and policy, which are to prevent multiplicity of suits and the attendant annoyance and additional cost to the debtor." As KFB's expert witness observed, it is unlikely that Shin will be able to raise any funds to defend either of KFB's pending actions from his real property because it is subject to the Korean prejudgment attachment. The sanction of the one action rule applies to this very situation for the purpose of encouraging secured creditors to exhaust their security first. Otherwise, secured creditors could impose the annoyance and expense of multiple lawsuits on debtors with impunity.

## II

KFB relies on two bankruptcy cases, *In re Tidrick* (Bankr. C.D.Cal. 1989) 105 Bankr. 584 and *In re Madigan* (Bankr. 9th Cir. 1991) 122 Bankr. 103, to support its contention that it is not subject to any sanction because it has not obtained a judgment in Korea.

In *Tidrick*, the debtors partially guaranteed a $150,000 loan and secured it with a deed of trust on their residence. The borrowers defaulted and the lender filed an action to recover a personal judgment against the borrowers and the debtors. Before trial, the parties entered into a stipulation in which the debtors acknowledged the debt and agreed to pay it in monthly installments. It also provided that, if the debtors failed to make payments as agreed, the lender could have judgment for the amount still owing. Although the parties signed the judgment, the court never signed or entered the judgment. Ultimately, the action was dismissed on the court's own motion. Later, when the debtors defaulted on the stipulated agreement, they filed for chapter 7 bankruptcy.

The bankruptcy court was called on to determine if the filing of the action for a personal judgment violated the "one action" rule of section 726, subdivision (a) barring the lender from foreclosing on the debtors' residence. The bankruptcy court held that, under California law, a "judgment [must] be entered before the sanction of the 'one form of action' rule applies to bar further recovery on collateral for a debt." (*In re Tidrick, supra*, 105 Bankr. at

p. 586.) As authority for its conclusion, the bankruptcy court relied on *Brice v. Walker* (1920) 50 Cal.App. 49 [194 P. 721].

The second bankruptcy case, *In re Madigan, supra,* 122 Bankr. 103, resolved a similar matter involving an action for a money judgment in which the debtor defaulted and then filed for bankruptcy. Like *In re Tidrick,* judgment was never requested or entered. Because the debt was secured, the bankruptcy court was called on to determine if the filing of the action for a money judgment violated the "one form of action rule." Holding that the lender was not subject to the sanction of losing its security interest because no judgment was entered, the *Madigan* court cited *Tidrick* and embraced its reliance on *Brice v. Walker, supra.* Although we are not bound by the bankruptcy court's interpretations of California law (*Service Employees Internat. Union v. County of Los Angeles* (1990) 225 Cal.App.3d 761, 768 [275 Cal.Rptr. 508]), it is appropriate to consider the California case on which it relied.

*In Brice v. Walker, supra,* 50 Cal.App. 49, plaintiff's father borrowed $300 from a lender evidenced by a promissory note secured by a mortgage on his automobile. The lender assigned the note and mortgage to a bank. When the plaintiff defaulted on the loan, the bank commenced an action for multiple claims including recovery of a personal judgment on the note without any reference to the mortgage. Prior to trial, the bank amended its complaint to omit the cause of action to enforce the note. Thereafter, the borrower gave his automobile to his daughter and the bank asserted its right to take possession of it as collateral for the loan. Plaintiff's daughter contended that the bank had made an election of remedies and lost its security interest by commencing its action on the note. The court held that the mere commencement of an action as an action at law on the note did not constitute an election of remedies and the bank retained the right of foreclosure. (*Id.* at p. 54.)

In *Brice v. Walker,* the court analyzed instances involving conditional sales contracts in which the seller had the right to bring an action for the purchase money or retake possession of the property but not both. *"In George J. Birkel Co. v. Nast,* 20 Cal.App. 651 . . . , the court said: 'The legal effect of such an election was, immediately upon the filing of the complaint, to transfer and vest in defendant title.' . . . [Furthermore,] [i]n *Geo. Birkel Co. v. Nast, supra,* the plaintiff was seeking to hold by attachment the property which by conditional sale contract had been delivered to the defendant. In none of these cases was it necessary to determine that the commencement of an action . . . without any judicial action by the court, and without any special proceeding by attachment or otherwise against the defendant's property, constituted an irrevocable election of the prior remedy." (*Brice v. Walker, supra,* 50 Cal.App. at pp. 52-53.) Thus, *Brice v.*

*Walker* is distinguishable not only on its facts, but in accordance with its own analysis that a "special proceeding by attachment or otherwise against the defendant's property" calls for a different result. Accordingly, KFB's reliance on *In re Tidrick, supra,* 105 Bankr. 584, and *In re Madigan, supra,* 122 Bankr. 103, is misplaced.

We are aware of the case authority which holds that, when the creditor commences an action on the debt for money, the sanction of section 726 is only triggered after the claim is reduced to judgment. (Conley, *The Sanction for Violation of California's One-Action Rule* (1991) 79 Cal.L.Rev. 1601, 1611, fn. 59.) Although that proposition is frequently repeated, its application has been factually limited to cases where the debtor's unpledged assets have either not been subjected to attachment or where the attachment has been reduced to execution on the final judgment. (See 3 Witkin, Summary of Cal. Law (9th ed. 1987) Security Transactions in Real Property, § 119, p. 620, and cases cited therein.) No case addresses the factual scenario raised here where an attachment has been imposed but no judgment has been entered. Where a creditor brings an action only on the note without reference to the security and obtains a provisional remedy affecting the debtor's property, the situation is expanded substantially beyond the mere filing of a lawsuit.

In *O'Neil* v. *General Security Corp.* (1992) 4 Cal.App.4th 587 [5 Cal.Rptr.2d 712], a subordinated secured creditor obtained a stipulated personal judgment which purported to preserve the right to pursue nonjudicial foreclosure. The court held that the stipulated personal judgment barred further recovery on the deed of trust and triggered the sanction of section 726 in favor of a senior secured creditor. In a thorough review of the policy reasons supporting section 726, the court noted: "The statutory scheme seeks to minimize or entirely eliminate the extent to which a debtor's unpledged assets may be seized to satisfy a secured creditor's claims, in that the debt must *first* be satisfied from the sale of the security." (4 Cal.App.4th at p. 604, italics in original.) For the very same reasons ("to prevent multiplicity of actions, to compel exhaustion of the security before any deficiency judgment is permitted, and to require that the fair value of the secured property be utilized before any personal judgment is entered against the debtor" [*id.* at p. 603]), an attachment of a debtor's unsecured property as a means to enforce an obligation secured by the debtor's real property is so contrary to public policy that its creation justifies the forfeiture of the secured creditor's security interest.

### III

KFB contends that its Korean prejudgment attachment is consistent with California law because section 483.010, subdivision (b) authorizes the issuance of an attachment order on a claim which was originally secured as to

which, through no act of the plaintiff, the security has become valueless or decreased in value to less than the amount owing on the claim. Assuming that provision is applicable, it was not invoked and has nothing to do with the bank's right to pursue attachment proceeding in Korea. Furthermore, attachment according to section 483.010, subdivision (b) requires a hearing in which the court must be persuaded by evidence that the security has become valueless or has declined in value below the amount of the claim. The application for this attachment remedy would presumably be made in a judicial foreclosure action seeking the difference between the value of the security and the amount of the claim or an action on the debt alone in which the creditor asserts no interest in the security because it is wholly valueless. We cannot perceive how a provision which prohibits an attachment on a claim which is secured, unless specified conditions are met, authorizes an attachment when none of the conditions have been met and in an action on the debt only.

Next, KFB attempts to justify its conduct by claiming that, "[the] Korean Lien is clearly the equivalent of a *lis pendens* or attachment lien under California." KFB asserts that, "Like a *lis pendens* or attachment, it merely gives notice to potential purchasers and lenders of KFB's claim and establishes priority for purposes of preserving a source from which KFB can satisfy a deficiency judgment when and if one is obtained in the instant action." Exactly! KFB has no right or need to file a lis pendens or an attachment. Its security interest in the California property is recorded and it must exhaust that security interest before seeking to encumber any of petitioners' unpledged assets. Strained comparisons with provisional remedies are simply unpersuasive.

## IV

Finally, KFB contends that, if its Korean action violates the one action rule, it does so only as to Shin and not the other petitioners and comakers of the promissory note on which they are jointly and severally liable. We disagree. KFB's form of debt is an instrument in which the promissory note and deed of trust compose one form of contract. "By choosing this form of debt instrument, [KFB] placed itself within the ambit of the rules applying to notes secured by deeds of trust in California, and thereby limited itself to the collection procedures prescribed by law. [KFB] must be held to have taken the deed of trust with knowledge of the rights and limitations imposed by section 726." (*Pacific Valley Bank* v. *Schwenke* (1987) 189 Cal.App.3d 134, 141 [234 Cal.Rptr. 298].)

In *Pacific Valley Bank*, the court held that a comaker of a note is entitled to assert section 726. There, Schwenke and O'Brien had signed a promissory note secured by a deed of trust on two properties owned by O'Brien.

Through a series of separate transactions with O'Brien, the bank reconveyed title to the security to enable him to refinance his properties. This was done without Schwenke's knowledge. Later the bank filed an action against Schwenke to recover on the note. Schwenke invoked section 726 as an affirmative defense. The bank relied on O'Brien's request for the reconveyances, but the court held that O'Brien could not forfeit Schwenke's right to the benefit of the "one form of action" rule. "[A] comaker of a promissory note secured by a deed of trust is entitled to the protection of the one-action rule of Code of Civil Procedure section 726. [The] Bank's release of security in violation of the statute relieved [the comaker] of any personal liability on the promissory note." (*Pacific Valley Bank* v. *Schwenke, supra,* 189 Cal.App.3d at p. 146.)

A similar conclusion was reached in *In re Pajaro Dunes Rental Agency Inc.* (Bankr. N.D.Cal. 1993) 156 Bankr. 263. There, the defendant loaned $1 million to two corporations of which the Kelleys were sole shareholders. The corporations executed a promissory note for the debt and the Kelleys secured and guaranteed the debt with a deed of trust on an office building. The corporations defaulted and the defendant brought an action for judicial foreclosure against the corporations and the Kelleys. One of the corporations filed for bankruptcy and the foreclosure action was stayed. The defendant then accepted a stipulated judgment against the nonbankrupt corporation and the Kelleys for $1 million. By accepting the stipulated judgment, the court held that the defendant had violated section 726 as to the corporation in bankruptcy, a comaker of the secured promissory note. The bankruptcy court held that, "[s]ection 726 is designed to protect from personal liability both makers and co-makers of a note secured by deed of trust on real property until such time as the security for the loan has been exhausted." (156 Bankr. at p. 267.) By accepting the stipulated judgment, "the sanction aspect of § 726 can be asserted by any co-maker of a note, especially a co-maker who owns the collateral on the note." (156 Bankr. at p. 268.) This follows because "the essence of the one-form-of-action rule is that secured creditors must either exhaust their security before *seeking* a personal judgment against their debtors or be deemed to have waived their security. (*Walker* v. *Community Bank* [(1974)] 10 Cal.3d [729] at pp. 735-736 [111 Cal.Rptr. 897, 518 P.2d 329].)" (*Passanisi* v. *Merit-McBride Realtors, Inc.* (1987) 190 Cal.App.3d 1496, 1506 [236 Cal.Rptr. 59], italics added.) ▮▮▀▮ Thus, although only Shin's property has been subject to the Korean lien, all of the petitioners are entitled to invoke the sanction aspect of section 726.[4]

▮ If a secured creditor lends to multiple borrowers on one loan secured by California real estate, it is limited to the collection procedure prescribed

---

[4]In its petition for rehearing, Korea First Bank asserts that *In re Pajaro Dunes Rental Agency, Inc., supra,* 156 Bankr. 263, is on appeal and is of no force and effect. That

by section 726. It cannot file and pursue actions against some of the borrowers and not others without risking the loss of the security. To conclude otherwise would allow secured creditors to generate multiple lawsuits, coerce borrowers and delay or avoid altogether the exhaustion of the security for the loan.

### DISPOSITION

Let a peremptory writ of mandate issue compelling respondent court to set aside its order of September 30, 1993, granting real party in interest's motion for summary adjudication, to enter a new and different order denying that motion, and to proceed in accord with the views expressed herein. The stay order issued by this court on February 7, 1994, is to remain in full force and effect pending the issuance of the remittitur in this cause.

Woods (A. M.), P. J., and Epstein, J., concurred.

A petition for a rehearing was denied July 29, 1994, and the opinion was modified to read as printed above. The petition of real party in interest for review by the Supreme Court was denied October 20, 1994.

---

proposition is incorrect. "The federal rule is that a judgment or order, once rendered, is final for purposes of res judicata until reversed on appeal or modified or set aside in the court of rendition. [Citations]." (*Martin* v. *Martin* (1970) 2 Cal.3d 752, 761 [87 Cal.Rptr. 526, 470 P.2d 662]; *Levy* v. *Cohen* (1977) 19 Cal.3d 165, 172 [137 Cal.Rptr. 162, 561 P.2d 252].)