[No. C060089. Third Dist. July 12, 2010.]

BANK OF AMERICA, N.A., Plaintiff and Respondent, v.
STONEHAVEN MANOR, LLC, et al., Defendants and Appellants.

COUNSEL

Freeman, D'Aiuto, Pierce, Gurev, Keeling & Wolf, Lee Roy Pierce, Jr., and Franklin J. Brummett for Defendant and Appellant Beck Investments Co., Inc.

Ganzer & Williams and James E. Ganzer for Defendant and Appellant Stonehaven Manor, LLC.

Orrick, Herrington & Sutcliffe, Marc A. Levinson, Jonathan G. Riddell and Katie C. DeWitt for Plaintiff and Respondent.

**OPINION**

**BUTZ, J.**—In this appeal we conclude that the property of a guarantor of a debt—a debt which is secured by the real property of the principal debtor and also that of a joint and several coguarantor—is subject to attachment where the guarantor has contractually waived the benefit of that security.

Accordingly, we shall affirm the trial court's appealable orders of attachment (Code Civ. Proc., § 904.1, subd. (a)(5)),[1] which reached the same conclusion.

## FACTUAL AND PROCEDURAL BACKGROUND

The principal debtor is Beck Properties, Inc. (Borrower), a residential developer, which obtained a $150 million line of credit from plaintiff Bank of America, N.A., and its affiliates (Bank) on June 18, 2007.

Borrower provided deeds of trust on real property to secure this line of credit.

Additionally, Bank entered into a guaranty agreement (Guaranty) on June 18, 2007, with three guarantors for this debt: defendant and appellant Stonehaven Manor, LLC (Stonehaven); defendant and appellant Beck Investments Co., Inc. (BIC); and Linda C. Beck Holding Company, LLC (Holding Company).

Holding Company gave Bank a real property deed of trust as security for the Guaranty. Stonehaven and BIC did not provide any property to secure their Guaranty obligations.

The Guaranty provides that (1) each guarantor is obligated individually to pay the debt; (2) each guarantor has waived any rights to rely on other guarantors or collateral; and (3) Bank may pursue prejudgment attachment. We will further examine these three provisions in turn.

As for each guarantor being obligated individually, the Guaranty specifies that if it "is signed by more than one Person, then all of the obligations of Guarantor . . . shall be jointly and *severally* binding on each"; that "the term 'Guarantor' shall mean all of such Persons and each of them *individually*"; and that "[a]ll promises . . . in this Guaranty are made by and shall be binding upon each and every such Guarantor, jointly and *severally* . . . ." (Italics added.) Similar language is peppered throughout the Guaranty. For

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

example, "Guarantor hereby jointly and *severally*, unconditionally . . . guarantees to [Bank] the punctual payment when due [of the line of credit and associated costs]." (Italics added.)

As for each guarantor waiving the right to rely on other guarantors or collateral, the Guaranty specifies that Bank "may pursue any Guarantor hereunder without being required (a) to pursue any other Guarantor hereunder or (b) to pursue rights and remedies under any Deed of Trust . . . with respect to" the line of credit. Again, similar language is found throughout the Guaranty. For example, "[G]uarantor hereby expressly waives . . . any and all rights . . . under any suretyship laws . . . [that] require [Bank] to take prior recourse . . . against any collateral [or] security . . . [which includes the specified waiver of Civil Code section 2849—surety entitled to the benefit of every security held by creditor for performance of principal obligation]." And: "[T]he liability of Guarantor under this Guaranty shall be absolute and unconditional irrespective of: [¶] . . . [¶] . . . the taking or accepting of any other security or guaranty for, or right of recourse with respect to, any or all of the Guaranteed Obligations"; "[G]uarantor waives all rights and defenses that Guarantor may have because the Guaranteed Obligations are secured by real property"; "Guarantor acknowledges and agrees that Guarantor may be required to pay and perform the Guaranteed Obligations in full without assistance or support from Borrower or any other Person"; and "[i]t shall not be necessary for [Bank], in order to enforce such payment by Guarantor, first to institute judicial or non-judicial foreclosure or pursue or exhaust any rights or remedies against Borrower or others liable on such indebtedness, or to enforce any rights against any security that shall ever have been given to secure such indebtedness . . . ."

Finally, as for the Guaranty's discussion of attachment, the Guaranty specifies that "[n]othing in [it] shall be deemed to . . . limit the right of [Bank] . . . to obtain from a court . . . prejudgment attachment."

Borrower defaulted on the line of credit in late 2007. A few months later, Bank sued guarantors BIC and Stonehaven on the Guaranty, and obtained an attachment against the property of each of them for the alleged debt balance of approximately $90 million. Bank did not seek attachment against Borrower or against guarantor Holding Company, but proceeded against the real property security each had tendered.

This appeal from BIC and Stonehaven followed.

## DISCUSSION

■ The issue on appeal is whether the property of guarantors BIC and Stonehaven was properly subjected to attachment. We conclude it was.

The attachment statute of section 483.010 starts us off. As pertinent here, that section states that "[a]n attachment may not be issued on a claim which is secured by any interest in real property . . . (including any . . . deed of trust of realty . . .)." (§ 483.010, subd. (b).)

BIC and Stonehaven argue that the Guaranty-based claim against them is secured by real property of Borrower and by real property of coguarantor Holding Company; consequently, under section 483.010, subdivision (b), an attachment against BIC and Stonehaven may not be pursued on that claim.

A summary of this attachment law that is provided in Witkin's treatise, together with an observation arising from that summary, furnishes the answer to this argument. It is not an answer that BIC and Stonehaven will like.

As the Witkin treatise accurately summarizes the relevant attachment law: "A guaranty has traditionally been regarded as an independent obligation. On this theory, although the principal debtor may have given security and thus have precluded attachment against him or her, attachment would be permissible in an action against the guarantor. But the 1939 legislation abolishing the distinction between guarantors and sureties ([Civ. Code, §] 2787 . . .) made the suretyship sections applicable to a guaranty; and, under [the suretyship law of] C[ivil] C[ode] [section] 2849, a surety or guarantor is entitled to the benefit of every security held by the creditor. Accordingly, a strong dictum in *American Guaranty Corp. of Calif. v. Stoody* (1964) 230 C[al.]A[pp.]2d 390, 393 [41 Cal.Rptr. 69], suggests that attachment may not be had in an action against a guarantor whose principal debtor gave security until the security is exhausted." (6 Witkin, Cal. Procedure (5th ed. 2008) Provisional Remedies, § 72, p. 77, citation omitted.)

The observation arising from this legal summary involves Witkin's recognition of the "strong dictum" in *Stoody*. The *Stoody* dictum noted in Witkin—i.e., attachment against a guarantor is precluded until the security is exhausted—was dictum because the guarantor in *Stoody, like the guarantors BIC and Stonehaven here, waived* its right to the benefit of the security given. (*American Guaranty Corp. v. Stoody, supra*, 230 Cal.App.2d at pp. 394–396.) As *Stoody* concluded: "Here the guarantor waive[d] his right under [suretyship law] [Civil Code] section 2849 to the benefit of the security given by the principal [debtor]. We can see no [public] policy reason why a guarantor should not be permitted, by contract, to waive his entitlement to this benefit." (*Stoody*, at p. 396; see also *id.* at p. 394 ["That a person may waive the advantages of a law which is intended for his benefit is a clearly established rule of law."]; accord, *Engelman v. Bookasta* (1968) 264 Cal.App.2d 915, 916–918 [71 Cal.Rptr. 120]; see also *United Central Bank v. Superior Court* (2009) 179 Cal.App.4th 212, 215–216 [101 Cal.Rptr.3d 395] (*United Central Bank*).)

BIC and Stonehaven try to distinguish *Stoody* and *Bookasta* on the ground that those decisions dealt with a waiver of security pledged by a borrower rather than by a coguarantor (such as Holding Company here). This is a distinction without a difference. As Bank argues persuasively, "the reasoning [of *Stoody* and *Bookasta*] remains equally applicable to security pledged by either [a borrower or a coguarantor] (especially because the right to benefit from security of another is based upon [the suretyship statute waived here of] Civil Code section 2849 [which states that a surety/guarantor is entitled 'to the benefit of *every* security for the performance of the principal obligation held by the creditor' (italics added)])."

BIC and Stonehaven also emphasize that there was but *one* guaranty here and that guaranty was secured by real property. That is not quite true. As noted, the Guaranty states that if it "is signed by more than one Person [(here, three persons)], then all of the obligations of Guarantor . . . shall be jointly and severally binding on each," and "the term 'Guarantor' . . . mean[s] all of such Persons and each of them individually." In the context of this "several/individual" liability, the Guaranty was the same as having three separate guaranties from BIC, Stonehaven, and Holding Company.

Along similar lines, BIC and Stonehaven argue there was but a *single claim* here, and "[a]n attachment may not be issued on a claim which is secured by" real property. (Quoting § 483.010, subd. (b).) *United Central Bank* rejected a similar argument by noting that while section 483.010, subdivision (b), does contain this language, the argument fails to recognize "that the 'claim' [at issue is] based on *unsecured* guaranties." (*United Central Bank, supra*, 179 Cal.App.4th at p. 215; see also *id.* at p. 216.)[2]

BIC and Stonehaven also cite a series of cases holding that a comaker of a promissory note secured by a deed of trust from the note's maker is entitled

---

[2] *United Central Bank* also states without qualification that "[a] guaranty is a separate and independent obligation from that of the principal debt." (*United Central Bank, supra*, 179 Cal.App.4th at p. 215.) Based on this legal principle, *United Central Bank* concluded that though the principal loans there were secured by real property, the guaranties were not, and therefore the prohibition in section 483.010, subdivision (b), against an attachment order for a claim secured by real property did not apply to the guaranties. (*United Central Bank*, at p. 215.) However, the authority that *United Central Bank* cited for this legal principle encompassed only law that predated the 1939 legislation that abolished the distinction between guarantors and sureties; this 1939 legislation, as we have seen, entitled guarantors, like sureties, to the benefit of every security held by the creditor for the payment of the principal debt. (*United Central Bank*, at p. 215, citing *Security-First Nat. Bank v. Chapman* (1940) 41 Cal.App.2d 219, 221 [106 P.2d 431] [which involved a 1935 debt, and which cited only *Loeb v. Christie* (1936) 6 Cal.2d 416, 420 [57 P.2d 1303] for this legal principle] and *Coppola v. Superior Court* (1989) 211 Cal.App.3d 848, 865–866 [259 Cal.Rptr. 811] [which cited only *Security-First Nat. Bank* for this legal principle]; see also the above quoted summary of the law from the Witkin treatise on the independence of guarantors, before and after this 1939 legislation]; see also *Wiener v. Van Winkle* (1969) 273 Cal.App.2d 774, 786 [78 Cal.Rptr. 761]

to the protection of the one-action rule of section 726. That rule is designed to prevent a multiplicity of suits to enforce payment on a note secured by the real property of one note maker, by protecting from personal liability both the note's maker and comakers until the security has been exhausted. (See *Shin v. Superior Court* (1994) 26 Cal.App.4th 542, 552–554 [31 Cal.Rptr.2d 587]; *Pacific Valley Bank v. Schwenke* (1987) 189 Cal.App.3d 134, 141–142, 146 [234 Cal.Rptr. 298]; *In re Pajaro Dunes Rental Agency, Inc.* (Bankr. N.D.Cal. 1993) 156 B.R. 263, 267–268; see also *Foreign Mines Development Co. v. Boyes* (C.C.N.D.Cal. 1910) 180 Fed. 594, 595–596.) This series of cases is inapposite. In the Guaranty, BIC and Stonehaven waived the benefit of the real property security; indeed, they waived the benefit of section 726 as well.

Next, BIC and Stonehaven contend that, while they may have waived the benefit of the suretyship statutes that require the creditor to proceed first against the security, they did not waive the attachment statute of section 483.010, subdivision (b) (i.e., the statute that precludes attachment on a claim secured by real property). As we have seen, though, the Guaranty specifies that nothing in it "shall be deemed to . . . limit the right of [Bank] . . . to obtain . . . prejudgment attachment." In any event, this contention only begs the issue we have decided in this appeal.

Finally, BIC and Stonehaven maintain that, because the obligation of guarantors and Borrower are "coterminous" and because the real property security was valued at $135 million (in 2007)—which is more than the Bank sought on the Guaranty ($90 million)—no right to attach order could issue since double recovery may result. Again, the Guaranty makes guarantors BIC and Stonehaven individually liable for paying the alleged debt of approximately $90 million (plus related costs) without initial resort to the security. Of course, Bank may not obtain double recovery; it may obtain only what it is owed on the debt (plus related costs). (*Walter E. Heller Western, Inc. v. Bloxham* (1985) 176 Cal.App.3d 266, 274 [221 Cal.Rptr. 425] [" 'The unmistakable policy of California is to prevent excess recoveries by secured creditors.' "].)

---

["[T]he [1939] abolition of the distinction between sureties and guarantors abolished the rule in contracts of guaranty that the obligation of the principal debtor and that of the guarantor were entirely independent obligations."].)

*United Central Bank* additionally noted correctly, though, that the guarantor there, like the guarantors BIC and Stonehaven here, waived its suretyship right to require the creditor to proceed first against the real property security for the principal loans, and therefore the guarantor's property could be attached. (*United Central Bank, supra,* 179 Cal.App.4th at pp. 215–216.)

## DISPOSITION

The attachment orders against BIC and Stonehaven are affirmed. Respondent Bank is awarded its costs on appeal.[3] (Cal. Rules of Court, rule 8.278(a)(1), (2).)

Scotland, P. J., and Cantil-Sakauye, J., concurred.

A petition for a rehearing was denied July 29, 2010, and appellants' petition for review by the Supreme Court was denied October 20, 2010, S185396. Chin, J., did not participate therein.

---

[3] Because they are unnecessary for our resolution, the judicial notice requests of Bank and BIC/Stonehaven are denied. Bank's other request, simply that "this Court . . . award Bank its . . . attorneys' fees on appeal," may be considered by the trial court.