Filed 5/19/25  P. v. Miller  CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff,<br><br>v.<br><br>TONIKA LYNETTE MILLER,<br><br>        Defendant;<br><br>LION SHARE INVESTMENTS, LLC et al.,<br><br>        Claimants and Appellants;<br><br>SELENE FINANCE LP et al.,<br><br>        Respondents. | A168248<br><br>(San Mateo County<br>Super. Ct. No. 18-SF-014403-B) |
| THE PEOPLE,<br><br>        Plaintiff,<br><br>v.<br><br>TONIKA LYNETTE MILLER,<br><br>        Defendant;<br><br>SARA JANSOHN et al.,<br><br>        Claimants and Appellants;<br><br>SELENE FINANCE LP et al.,<br><br>        Respondents. | A168336<br><br>(San Mateo County<br>Super. Ct. No. 18-SF-014403-B) |

1

The People charged Tonika Lynette Miller with several felonies for defrauding Lion Share Investments, LLC (Lion Share) and Sara Jansohn via real estate transactions. Separate from the criminal case, the trial court levied Miller's property under Penal Code section 186.11 — an enhancement that aids enforcement of restitution awards in certain white collar criminal cases by seizing assets and liquidating them to pay restitution. (Undesignated statutory references are to this code.) But the property was also subject to a mortgage loan from Selene Finance LP and Wilmington Savings Fund Society, FSB doing business as Christiana Trust, not individually but as trustee for Pretium Mortgage Acquisition Trust (collectively, Selene), secured by a deed of trust.

While marketing the property for liquidation under section 186.11, Selene also collected $168,000 in rent from Miller's tenant and used those funds to pay down Miller's loan. According to Lion Share and Jansohn, this setoff violated the security-first rule in Code of Civil Procedure section 726, which prohibits a creditor's "extrajudicial appropriation of the debtor's assets before foreclosure." (*Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 999, italics omitted (*Security Pacific*).) They argued Selene thereby forfeited its right to the security and was not entitled to proceeds from the sale of the property. The trial court disagreed — concluding the security-first rule does not apply with respect to real property seized under section 186.11 — and distributed approximately $1.9 million to Selene from the sale proceeds. Lion Share and Jansohn appeal. We affirm.

**BACKGROUND**

In 2018, Miller purchased real property in Studio City (property) after obtaining a $1,445,000 loan from a bank, secured by a deed of trust. The following year, the bank assigned its interest in the deed of trust to

2

Shellpoint Mortgage Servicing and Deephaven Mortgage, LLC (collectively, prior lenders).

In August 2019, the People charged Miller with multiple felonies — such as procuring and offering a false or forged instrument, grand theft of real property, and money laundering — related to transactions defrauding Lion Share and Jansohn. Miller allegedly participated in a scheme to fraudulently induce Jansohn, an elderly victim, to convey her Redwood City property to Justin Hall, Miller's codefendant. Hall then paid Jansohn $2,000 before reselling the house to Lion Share for $997,000. Upon the People's August 2019 petition for a temporary restraining order under section 186.11, the trial court temporarily enjoined Miller and other entities acting in concert with her from transferring or disposing of the property, thus preserving it and other assets to pay fines and restitution.

Miller defaulted on her loan and the prior lenders issued a notice of default in September 2019, claiming an outstanding balance of $1,527,292.55 — past due loan payments in addition to the full loan principal amount. The People subsequently recorded a lis pendens on the property. Pursuant to the trial court's order, prior lenders also filed a claim regarding their interest in Miller's property. Later that month, the court replaced the temporary restraining order with a preliminary injunction, restraining Miller and other entities from disposing of the property. (§ 186.11, subd. (d)(2).) Relevant here, the injunction would remain in effect throughout the criminal proceedings until the court could determine whether a portion of the property should be levied upon to pay fines or restitution to the victims of the crimes. Ultimately, Miller pled no contest to three felonies, admitted the offenses constituted aggravated white collar crimes, and waived any challenge to the court's levy. (*Id*. subd. (a)(2).)

Pursuant to a November 2019 stipulation, the prior lenders would facilitate the management and sale of the property in lieu of appointing a receiver to liquidate it. The lenders had the right to market and sell the property within 120 days of a court order approving the stipulation. The stipulation prioritized distributing sale proceeds as follows: "proceeds will first be applied to pay off the outstanding indebtedness due under the Loan (including the entire outstanding loan balance, all accrued interest, fees and costs etc. as set forth in the note and deed of trust)." Any remaining proceeds would be distributed as restitution to alleged victims or as otherwise ordered by the court.

The prior lenders failed to sell the house in the allotted timeframe. Tenants claiming rights under a lease occupied the property. The beginning of the Covid-19 pandemic further hampered the prior lenders' ability to market and sell the property. And by mid-2020, the state restricted evictions due to the pandemic — evicting the tenants was not viable. In September 2020, the prior lenders and the People renewed the stipulation regarding the marketing and sale of the property, and they noted the outstanding loan balance was $1,621,318.89. To address the tenants' presence, the prior lenders had "the right to enforce the provisions of any lease or rental agreement between remaining tenants or occupants." The stipulation also stated, "Lenders are hereby deemed the appropriate parties to accept any rent due or to enforce backpayment of unpaid rent under such an agreement." The prior lenders were given 180 days to market and sell the property in good faith.

In October 2020, the prior lenders transferred their interest in the property, and Selene began servicing the loan. Because the property had not yet been sold, Selene entered into a renewed stipulation with the People in

4

January 2021 to market and sell the property; it contained the same provisions regarding rent. For more than a year, the tenants provided back payment as well as ongoing rent to Selene, totaling $168,000. Selene applied these payments to the outstanding escrow balance (Selene's expenses to meet Miller's obligations with regard to the property, including property taxes and hazard insurance); corporate advances (expenses Selene incurred while servicing the loan that were recoverable from Miller); fees, late charges, and attorney fees; and principal on the loan.

Selene ultimately agreed to sell the property to the tenants for $1.75 million. In October 2021, over Lion Share's and Jansohn's objection that the price was approximately $500,000 less than the appraised value, the trial court approved the sale for $1.75 million. The proceeds would first be applied to the sale expenses, including $17,500 to Selene's real estate broker. Next, proceeds would pay the outstanding loan balance, accrued interests, and fees and costs, which totaled approximately $1.72 million. Selene also agreed to a $100,000 discount from the loan payoff amount. Any remaining proceeds were to be deposited in the district attorney's asset forfeiture account to distribute as restitution to the victims or otherwise ordered by the court.

Jansohn did not approve of the sale. In a motion to vacate the order, she argued the sale price was inadequate, Selene failed to adequately market the property, and it improperly retained rent payments to reduce the principal loan amount without providing any legal justification.[1] She also obtained a writ of attachment on the property in a related civil case against Miller for elder financial abuse. Although the trial court denied the motion to vacate, the tenants nonetheless canceled the sale due to the attachment

[1] We express no opinion about any civil claims appellants might allege against Selene.

5

order.  As a result, the court approved a later stipulation vacating its approval of the sale and appointing a receiver to market and sell the property.  The People, Selene, and the receiver agreed to distribute the sale proceeds to Selene first and the receiver second, despite the default order of distribution in section 186.11 — i.e., the receiver first, and holder of a valid lien, mortgage, or security interest second.

In December 2022, the trial court ordered Miller to pay Jansohn $182,653.82 and Lion Share $1,429,850.19 in victim restitution.  The same month, the receiver secured an agreement to sell the property for $2.13 million.  The parties submitted a stipulation to approve the sale, which the court entered the next day.  After sales commissions and seller's credits, the People held in escrow the $1,949,677.78 in sale proceeds.  Selene argued the court should distribute the proceeds to it first since it had the first priority lien recorded prior to the People's lis pendens on the property.  Lion Share and Jansohn argued the court's orders authorized the lenders to collect rent from Miller's tenants, but they could not use the rent to offset the loan principal.  Doing so — paying themselves at least $168,000 from the rents collected — violated the security-first rule, thus waiving their security interest.  According to Lion Share and Jansohn, lenders were not entitled to *any* portion of the sale proceeds.

The trial court determined the deed of trust did not entitle Selene to the rent payments.  Nor did, the court noted, the stipulations authorize Selene to receive the rent as its own property.  The court nonetheless determined the security-first rule did not apply here because it was "legally impossible" for Selene to foreclose on property that had been seized under section 186.11.  It further underscored section 186.11 authorized the seizure of the rent payments because they were Miller's assets.  By applying the rent

6

collected each month to the outstanding debt, Selene significantly reduced Miller's unpaid balance. For that reason, the court ordered the rent to be retroactively applied as setoffs against Miller's loan rather than awarding Lion Share and Jansohn the $168,000 in rent — ordering "the lender apply all rents collected from the tenants at the [property] to the unpaid balance of the loan at the time those rent payments were received, and that this order be ordered nunc pro tunc as of January 6th of 2021."

Ultimately, the trial court ordered $1,905.341.96 disbursed to Selene, $39,223.66 disbursed to the receiver, and $5,112.16 disbursed to the victims — $4,532.95 to Lion Share, and $579.21 to Jansohn.

## DISCUSSION

Lion Share and Jansohn contend the trial court erred by failing to apply the security-first rule. They argue Selene made a unilateral setoff using Miller's unsecured assets — applying the $168,000 in rent to offset the loan principal secured by her real property — before foreclosing on the property. As a result, they reason, Selene forfeited its approximately $1.9 million security interest in the property and any entitlement to sale proceeds. In response, Selene primarily argues the security-first rule does not apply here because the court seized and froze Miller's assets under section 186.11, thus precluding it from pursuing foreclosure of the real property.

Interpreting a statute requires ascertaining and effectuating the Legislature's purpose. (*Alejandro N. v. Superior Court* (2015) 238 Cal.App.4th 1209, 1223–1224.) We focus on the statute's words, giving them their plain, ordinary meaning and construing the language in the context of the whole statutory framework. (*Id*. at p. 1224.) "When multiple statutory schemes are relevant, we evaluate each scheme and seek to

7

harmonize them to carry out their evinced intent." (*Ibid*.) After independently reviewing this issue of law, we conclude Selene has the better argument. (*Walker v. Physical Therapy Bd. of California* (2017) 16 Cal.App.5th 1219, 1227 [de novo standard of review for questions of law].)

## I.

Criminal victims have the right to restitution for their losses from persons convicted of crimes. (Cal. Const., art. I, § 28, subd. (b); § 1202.4, subd. (a)(1).) Defendants charged with committing two or more related felonies involving fraud and taking more than $100,000 may also be charged with an aggravated white collar crime enhancement. (§ 186.11, subd. (a).) A true finding on the enhancement exposes defendants to, among other things, additional prison time and paying victim restitution. (*Id*., subds. (a)–(d).)

Section 186.11 provides a "procedural mechanism to freeze a defendant's assets and following a conviction, seize those assets to pay victim restitution." (*People v. Shah* (2023) 96 Cal.App.5th 879, 896; § 186.11, subd. (d)(2).) The prosecution may file a petition to freeze and seize property and assets, thus commencing a proceeding pendent to the criminal proceeding. (§ 186.11, subd. (d)(2); *Shah*, at p. 902.) The prosecution must promptly record a lis pendens providing formal notice of the pending criminal action, and it may seek a temporary restraining order to preserve the property. (*Shah*, at p. 888, fn. 2; § 186.11, subds. (d)(2), (4).) The court may preserve *any* asset or property in the defendant's control via a temporary restraining order or preliminary injunction — seized assets need not be traceable to, or the product of, the alleged criminal activity. (§ 186.11, subd. (d)(1)–(2); *People v. Semaan* (2007) 42 Cal.4th 79, 86–87.) Persons with interest in the seized property may file a claim with the court noting the nature and amount of their interest in the seized assets. (§ 186.11, subd. (d)(3).) Upon a

8

conviction, the court must continue the preliminary injunction until sentencing to determine the portion of property or assets that shall be levied upon to pay fines and restitution. (*Id.*, subd. (h)(1)(A).) But orders imposing restitution "shall not affect the interest in real property of any third party that was acquired prior to the recording of the lis pendens . . . ." (*Id.*, subd. (h)(2).)

Lion Share and Jansohn do not challenge this statutory scheme. Rather, they contend the section 186.11 provisions regarding the liquidation of property or assets are subject to Code of Civil Procedure section 726. That provision states, in relevant part, there "can be but one form of action for the recovery of any debt or the enforcement of any right secured by mortgage upon real property" — judicially construed as the " 'security-first' and 'one-action' rule" — and the action must be in accordance with Chapter 1, "Actions for Foreclosure of Mortgages." (Code Civ. Proc., § 726, subd. (a); *O'Neil v. General Security Corp.* (1992) 4 Cal.App.4th 587, 597 (*O'Neil*).) The one-action rule requires a secured creditor in a single action — a foreclosure action that is either judicial or nonjudicial — to exhaust the security before obtaining "a monetary 'deficiency' judgment against the debtor." (*O'Neil*, at p. 597; *Shin v. Superior Court* (1994) 26 Cal.App.4th 542, 545.) Suing on the security instead of pursuing foreclosure of the mortgage or deed of trust violates the rule. (*O'Neil*, at p. 597.) By electing to sue, the creditor waives the right to foreclose or sell the security under a power of sale. (*Ibid.*)

Relevant here, a creditor who extrajudicially appropriates a debtor's assets before foreclosing on the security also violates Code of Civil Procedure section 726. (*Security Pacific*, *supra*, 51 Cal.3d at p. 999.) An offset "is analogous to an action against property of the debtor . . . which has resulted in [the property's] seizure and transfer" to the creditor's possession.

9

(*Kirkpatrick v. Westamerica Bank* (1998) 65 Cal.App.4th 982, 989, italics omitted.)  *Security Pacific* explained that, because the security-first rule prohibits "a bank from bringing a judicial action before foreclosing the security, the rule must equally prohibit a bank's extrajudicial appropriation of the debtor's assets before foreclosure." (*Security Pacific*, at p. 999, italics omitted.)  A creditor forfeits its right to the security by taking a setoff from a borrower's bank account and applying it to the loan principal. (*Id.* at pp. 1001–1002.)

## II.

For the first time on appeal, Selene contends Lion Share and Jansohn lack standing to invoke Code of Civil Procedure section 726.  Although challenges to standing may be raised at any time, Selene's is meritless. (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 438.)  The "sanction aspect of [Code of Civil Procedure] section 726 operates for the benefit of both the primary debtor and third parties claiming an interest in the property, whether as successors-in-interest or third party lienholders." (*O'Neil*, *supra*, 4 Cal.App.4th at p. 600.)  Both Lion Share and Jansohn have judgment liens on Miller's property. (*Integrated Lender Services, Inc. v. County of Los Angeles* (2018) 22 Cal.App.5th 867, 875 ["order to pay restitution is deemed a money judgment, fully enforceable as if it were a civil money judgment" and the "holder of a money judgment may record it to create a judgment lien on real property"].)  "[T]hird party lienholders," such as Lion Share and Jansohn, "have standing to assert" the security-first protections. (*O'Neil*, at p. 601.)

Next, we agree Selene initially had no right to apply the $168,000 in rent to outstanding escrow, corporate advances, and the unpaid loan balance. The deed of trust securing the loan does not include language assigning the

rent to lenders.  And as Selene concedes, it collected the rent as assets under the trial court's section 186.11 jurisdiction and pursuant to stipulations.  The stipulations named Selene as the appropriate party "to *accept* any rent due, to enforce backpayment of unpaid rent . . . or to have received and/or to enforce or collect payment of any rent which was or may have already been paid to Miller."  (Italics added.)  But they did not authorize *use* of the rent.[2]

But we conclude the security-first rule does not apply here because the section 186.11 proceeding halted Selene's foreclosure.  (*Security Pacific*, *supra*, 51 Cal.3d at p. 999 [security-first rule prohibits "a bank's *extrajudicial* appropriation of the debtor's assets *before foreclosure*"], second italics added.)  By its own terms, Code of Civil Procedure section 726 requires instituting a civil foreclosure action for recovering the amount named in a deed of trust or mortgage rather than liquidating "those assets to pay restitution to victims."  (*People v. Shah*, *supra*, 96 Cal.App.5th at p. 887; Code Civ. Proc., § 726; § 186.11, subd. (d)(2).)  It "is not an isolated statute;" it "is part of the statutory protections and procedures which restrict the secured creditor's remedies for notes secured by real property."[3]  (*O'Neil*, *supra*, 4 Cal.App.4th

---

[2] The trial court subsequently ordered Selene to apply the rent to the unpaid balance of the loan at the time the payments were received nunc pro tunc to when Selene first started collecting rent — which may be a pendente lite order to maintain and preserve the property under section 186.11, subdivision (e).  (*Dakota Payphone, LLC v. Alcaraz* (2011) 192 Cal.App.4th 493, 501 ["A judgment entered nunc pro tunc gives effect to the ruling retroactively from the date cited in the nunc pro tunc order"].)  But we express no opinion as to whether such an order was properly entered, as that issue is not before us.

[3] Implementing the security-first rule requires the creditor to "elect his course."  (*O'Neil*, *supra*, 4 Cal.App.4th at p. 603.)  "In a judicial foreclosure, if the property is sold for less than the amount of the outstanding indebtedness,

11

at pp. 603, 597.) That statute is intended "to prevent multiplicity of actions, to compel exhaustion of the security before any deficiency judgment is permitted, and to require that the fair value of the secured property be utilized before any personal judgment is entered against the debtor" or before the creditor resorts "to the debtor's unencumbered assets." (*Id.* at p. 603; *Security Pacific,* at p. 1005.) Lion Share and Jansohn fail to identify — and we cannot find — any case law imposing the security-first rule in a section 186.11 proceeding. (*Kirkpatrick v. Westamerica Bank*, *supra*, 65 Cal.App.4th at p. 986 ["Section 726 does not prescribe a sanction for violation of the one form of action rule. Rather, the courts have fashioned common law remedies to advance its purposes"].)

The possibility of a creditor exhausting the security does not exist in a section 186.11 proceeding where transferring and disposing of property is supervised by the criminal court. Any property in the defendant's control may be subject to a levy to pay restitution, and the court may order

---

the creditor may seek a deficiency judgment, or the difference between the amount of the indebtedness and the fair market value of the property, as determined by a court, at the time of the sale." (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1236.) The debtor, however, "has a statutory right of redemption, or an opportunity to regain ownership of the property by paying the foreclosure sale price, for a period of time after foreclosure." (*Ibid*.) "In a nonjudicial foreclosure, also known as a 'trustee's sale,' the trustee exercises the power of sale given by the deed of trust." (*Ibid*.) The process is "less expensive and more quickly concluded than judicial foreclosure, since there is no oversight by a court, '[n]either appraisal nor judicial determination of fair value is required,' and the debtor has no postsale right of redemption." (*Ibid*.) But in a nonjudicial foreclosure, "the creditor may not seek a deficiency judgment." (*Ibid*.) "Thus, the antideficiency statutes in part 'serve to prevent creditors in private sales from buying in at deflated prices and realizing double recoveries by holding debtors for large deficiencies.' " (*Ibid*.)

immediate transfer of property to satisfy any judgment under section 186.11. (*Id.*, subds. (d)(1), (h)(1)(A).)  Section 186.11 expressly addresses liquidating property secured by a mortgage.  (*Id.*, subds. (h)(2), (i).)  It prioritizes distributing "[t]o any holder of a valid lien, mortgage, or security interest up to the amount of his or her interest in the property or proceeds" before distributing proceeds to victims for restitution.  (*Id.*, subds. (i)(2)–(3).)  While an "order imposing fines and restitution shall not affect the *interest* in real property of any third party that was acquired prior to the recording of the lis pendens," the levy order essentially stripped Selene of its ability to *freely* elect to institute judicial or nonjudicial foreclosure proceedings on the real property.  (*Id.*, subd. (h)(2), italics added; *Kirkpatrick v. Westamerica Bank*, *supra*, 65 Cal.App.4th at p. 989 [the security-first rule is an election of remedies doctrine].)

Here, the prior lenders issued a notice of default in September 2019 and claimed an outstanding balance of past due loan payments as well as the full loan principal amount before transferring their security interest in the property to Selene.  (Civ. Code, § 2924, subds. (a)(1), (6) [requiring mortgagee to first file for record notice of default before foreclosure]; cf. *FirstMerit Bank, N.A. v. Reese* (2015) 242 Cal.App.4th 408, 413 [" 'The assignee "stands in the shoes" of the assignor, taking his or her rights and remedies, subject to any defenses that the obligor has against the assignor prior to notice of the assignment' "].)  But the trial court had already issued a temporary restraining order, enjoining the transfer or disposal of the property.  By the time the prior lenders transferred their interest to Selene, the court's order effectively precluded continuing with foreclosure.  Under the circumstances of this case, we do not consider Selene's use of the rent to offset the loan principal as "manifesting an election to not foreclose pursuant to the one-

13

form-of-action rule of section 726." (*Nungaray v. Litton Loan Servicing, LP* (2011) 200 Cal.App.4th 1499, 1506.)

None of Lion Share's and Jansohn's arguments persuade us otherwise. First, that the appointed receiver ultimately sold the property does not demonstrate Selene could have foreclosed on the property before seeking to recover from Miller's unsecured assets. The court controlled Selene's ability to sell or foreclose on the property. Second, the approved stipulations authorizing the prior lenders and Selene to market and sell the property did not authorize them to foreclose, as Lion Share and Jansohn insist. True, a stipulation included a provision referencing foreclosure: "the Parties shall return to the Court for further instructions and/or to address next steps in the process including but not limited to the potential appointment of a receiver or foreclosure" if the property did not sell within an allotted timeframe. This passing reference merely suggested foreclosure was one of several possibilities the parties could consider when addressing the failure to sell the property. While foreclosure may not have been "legally impossible," Lion Share and Jansohn fail to identify anything in the record indicating the parties discussed this option.[4] Finally, we find no merit in Lion Share's and Jansohn's assertion that the security-first rule is violated when a creditor

---

[4] This makes sense. "[A]t forced sales such as a trustee's sale the full potential value of the property being sold is rarely realized." (*Strutt v. Ontario Savings & Loan Assn.* (1972) 28 Cal.App.3d 866, 876.) A property's price at a trustee's sale "is not deemed the equivalent of the property's fair market value." (*Alliance Mortgage Co. v. Rothwell*, *supra*, 10 Cal.4th at p. 1236.) Presumably, allowing Selene to engage in a nonjudicial foreclosure would further diminish the proceeds for distribution and result in an even less favorable outcome for Lion Share and Jansohn, who originally objected to the proposed sale to the tenant because it was approximately $500,000 below the property's market value.

obeys a court order — in a section 186.11 proceeding — to use an asset to offset the principal on a loan secured by a deed of trust on seized property. Accepting this argument would mean a creditor would be forced to choose between willfully disobeying a valid court order and forfeiting its security. (*In re Marcus* (2006) 138 Cal.App.4th 1009, 1014.)  Indeed, Lion Share and Jansohn do not challenge the court's authority to order a creditor to engage in offsets.  Nor can they — section 186.11 proceedings are intended to prevent the dissipation of property to pay for restitution.  (*Id.*, subd. (d)(1)–(2).) Paying the principal and other costs of the loan prevented the principal from growing before the property was liquidated.  Otherwise, the sale proceeds would have been insufficient to satisfy the growing debt, leaving little if any proceeds for victim restitution.

In sum, the trial court properly concluded the security-first rule did not apply here. [5]

## DISPOSITION

The judgment is affirmed.  In the interests of justice, each party shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)

---

[5] At our request, the parties addressed the post-liquidation distribution of the proceeds of the sale in the context of any entitlement to the $168,000 in rents under section 186.11, subdivision (i) at oral argument.  But at oral argument, Lion Share and Jansohn expressly disavowed any argument in the alternative that they are entitled to that asset.  For that reason, we express no opinion on that point.

15

_____

RODRÍGUEZ, J.

WE CONCUR:


_____

TUCHER, P. J.


_____

FUJISAKI, J.

A168248 & A168336; *People v. Miller*

16